## SALAZAR, APPELLANT, v. TAYLOR, APPELLEE.

1. CHALLENGE OF JUROR.

The decision of the trial court on the challenge of a juror for cause is not ground for reversal, unless manifestly erroneous and prejudicial to the party complaining of it.

2. PROOF OF ADMINISTRATORSHIP.

Where a party suing as administrator produces evidence of the death of his intestate, and of the issuance of letters of administration, as alleged, and no evidence is offered to the contrary, the court is justified in considering the representative capacity of plaintiff as an established fact.

3. SUFFICIENCY OF COMPLAINT.

The averment of a promise by defendant *under his hand*, is equivalent to an averment of a promise in writing signed by defendant.

Insufficient averments in a complaint may be aided by the averments of the answer.

In a suit upon a promissory note it is not necessary to aver a consideration for the promise of the maker.

4. RATE OF INTEREST.

Where a note is made payable *with interest*, without specifying the rate, or the time from which the interest is to be computed, the note carries interest from the date of its execution at the legal rate fixed by law.

Where a promissory note was made payable " with the interest at the rate of one and one-quarter," but contained nothing more to indicate the rate of interest; *held*, that the note should be construed as bearing only the legal rate of interest from its date of execution.

5. OPINION AS TO SIGNATURE.

A witness otherwise competent, having first given evidence showing that he has had reasonable means and opportunity of becoming acquainted with the signature of an individual, may give his opinion whether the signature to a paper offered in evidence is or is not the genuine signature of such individual.

6. RECEIPTS, WHEN-EVIDENCE.

A receipt acknowledging the payment of money is *prima facie* evidence of payment in favor of the party producing it, when the genuineness of the receipt is proved by a preponderance of the evidence, but such evidence may be rebutted by competent testimony.

7. INTEREST OF WITNESSES.

It is proper for the court to charge that in determining the weight of the testimony given by the respective witnesses concerning material matters in controversy, the jury have the right, and that it is their duty, as jurors, to take into consideration the interest which any witness may have in the subject-matter involved in the litigation.

8. DE MINIMIS NON CURAT LEX.

A judgment will not be reversed by reason of any error or defect which does not affect the substantial rights of the parties.

9. VARIANCE.

A variance in the evidence from the pleadings which does not surprise or injure either party, does not affect their substantial rights.

*Appeal from the District Court of Las Animas County.*

ACTION upon promissory notes by administrator of the payee against the maker. Verdict and judgment for plaintiff. Defendant appeals.

Mr. JAMES M. JOHN, for appellant.

Messrs. NORTHCUTT & FRANKS, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

1. The overruling of a challenge to one of the jurors is assigned for error. The challenge was upon the ground of a previously formed opinion. In civil as well as criminal actions, challenges for cause are triable by the court. The decision of the trial court upon such challenge is not ground for reversal by an appellate court unless the decision is manifestly erroneous and prejudicial to the party complaining of it. This rule is particularly applicable when the decision of the challenge depends upon oral evidence as in this case. From the evidence submitted, we cannot say that the trial court erred in concluding that the juror had not formed or expressed an unqualified opinion or belief as to the merits of the action. Code, §§ 182, 183 ; *Babcock v. The People*, 13 Colo. 515.

2. The complaint alleged the death of Pedro Begue, and the due appointment of plaintiff as his administrator before the commencement of this action. On the trial, plaintiff introduced evidence showing the death of Begue as alleged. Letters of administration, issued and attested in due form by the county court, were also produced before the court, showing the appointment of plaintiff as administrator of Begue as alleged. Nothing being offered to controvert the evidence thus produced, the court was justified in considering the representative capacity of the plaintiff as an established fact for the purposes of the trial ; and in such case, it was not essential that the letters of administration should be *formally* read to the jury. *Dyer v. McPhee*, 6 Colo. 174.

3. It is assigned for error that the complaint does not state facts sufficient to constitute a cause of action. The complaint contains, *inter alia*, the following :

" For a first cause of action, on the 2d day of May, 1888,

at the city of Trinidad, Las Animas county, Colorado, the
defendant Jose A. Salazar promised and agreed with the said
Pedro Begue, *under his hand* to pay to said Pedro Begue the
sum of fifteen hundred dollars, on the first day of June, 1888,
with interest thereon from the second day of May, 1888, at
the rate of one and one quarter ($1\frac{1}{4}$) per cent per month until
paid.   That he has not paid the same or any part thereof."

The second cause of action is the same in substance except
as to dates and amount.   These are the only causes of action
presented for consideration on this appeal.

The objection urged by appellant is, that the complaint
does not allege any consideration for the promises sued on.
This objection is not well taken.   The averment of a promise
by defendant *under his hand* is equivalent to an averment of
a promise *in writing* signed by defendant.   The word *hand*
in legal parlance is often used to denote handwriting, or a
written signature ; as, *witness my hand and seal ;* or, *witness
my hand*, if the instrument be not under seal.   The word is
thus used in our statutes.   In certain cases a judge or justice
of the peace is authorized to issue a warrant *under his hand*.
This undoubtedly means a writ or process in writing, signed
by the judge or justice ; and when thus issued, it is declared
to be valid without any seal.   Gen. Stat. §§ 978, 985 ; Mills
An. Stats. §§ 1484, 1491.

Appellant's objection to the complaint is untenable at this
stage of the controversy for another reason.   Without de-
murring, defendant filed a general denial, together with certain
pleas of payment in which the promises sued on were de-
scribed as *promissory notes*.   This is an instance of *express
aider*, wherein the averments of the answer supplement the
averments of the complaint in respect to the character of
the promises sued on.   Having thus supplied the supposed
defect in the complaint, the defendant cannot avail himself
of such defect as a ground for arresting or reversing the
judgment.   See *Robinson Con. M. Co. v. Johnson*, 13 Colo.
260, and authorities there cited.

A promise in writing by one person to pay another a cer-

tain sum of money at a certain time is a promissory note. A promissory note imports a consideration, even without the formal words *for value received*, and in an action thereon it is not necessary to aver a consideration for the promise of the maker. Story on Promissory Notes, § 1; *Cowan v. Hallack*, 9 Colo. 578, and authorities there cited; Bliss on Code Pleading, § 268.

4. It is assigned for error that there is a manifest variance between the notes introduced in evidence and the notes described in the complaint. The first and second counts of the complaint being founded upon promissory notes, it follows that defendant was entitled to object, as he did, to the admission of evidence under those counts which did not, in substance, conform to their allegations. The notes given in evidence read as follows:

"TRINIDAD, Colorado, May 2, 1888.

"Thirty days after date will pay to Mr. Pedro Begue or to his order the sum of one, fifteen hundred dollars with the interest at the rate of one and one quarter until they will be paid. JOSE A. SALAZAR."

"TRINIDAD, Colorado, August 29, 1887.

"Twelve months after date promise to pay to Mr. Pedro Begue, or to his order the sum of two thousand dollars in cash with interest at the rate of one and ¼ the interest, for value received. JOSE A. SALAZAR."

It will be observed that neither of the notes specifies a rate of interest corresponding to the averments of the complaint. The rate of interest specified in each count of the complaint is, "one and one quarter $(1\frac{1}{4})$ per cent per month until paid." The notes do not specify interest at any rate *per cent per month*. Neither of the notes contains the words, *per cent per month*, nor are any words of the same legal tenor and effect contained in the notes. There was, therefore, a substantial variance between the notes and the averments of the complaint; and the notes should not have been admitted in evidence without an amendment of the complaint.

To warrant the recovery of interest, *as such*, in the courts

of this state, the case must come fairly within the terms of the statute. *Hawley v. Barker*, 5 Colo. 118; *D. & S. P. R. R. Co. v. Conway*, 8 Colo. 1; *Neuman v. Dreifurst*, 9 Colo. 232; *O. & G. S. & R. Co. v. Tabor*, 13 Colo. 58, 59; *Butler v. Rockwell*, 17 Colo. 290; *Sammis v. Clark*, 13 Ills. 544.

The provisions of the statute in force when the notes in controversy were executed, and by which any recovery of interest thereon must be governed, were as follows:

" Section 1. The legal rate of interest on the forbearance or loan of any money, when there is no agreement between the parties, as specified in section three of this act, shall be at the rate of ten per centum per annum.

Sec. 2. Creditors shall be allowed to receive interest, when there is no agreement as to the rate thereof, at the rate of ten per cent per annum, for all moneys after they become due, on any bond, bill, promissory note or other instrument of writing. * * *

" Sec. 3. The parties to any bond, bill, promissory note or other instrument of writing, may stipulate therein for the payment of a greater or higher rate of interest than ten per cent per annum, and any such stipulation contained in any such instrument of writing may be enforced in any court of law or equity in the state." General Statutes 1883, p. 559; *Butler v. Rockwell, supra.*

It is suggested with much force and reason that in executing the notes in controversy the parties intended to stipulate for interest other than the statutory rate. But what rate? The statute says that parties to such instruments may stipulate *therein* for interest higher than the legal rate. In this instance it is clear that the parties to the note did stipulate *therein* for interest, but they did not stipulate *therein* for interest at any definite rate. Upon the face of the notes the language in respect to the *rate* of interest is unintelligible and meaningless; in legal effect, the language must be treated as a nullity in respect to *rate*, though not in respect to *interest*.

In the case of *Holmes v. Trumper*, 22 Mich. 430, where the note, as originally executed, provided for interest, but

the rate was left blank, the Supreme Court of that state said: "We are entirely satisfied that this note when signed without the addition of the words '10 per cent' was, notwithstanding the word 'at,' in legal effect, a complete and valid note, drawing the legal rate of interest at seven per cent." See, also, *Hoopes v. Collingwood*, 10 Colo. 107.

It would be a hyper-technical construction of our interest statute to hold, that parties to a written instrument cannot stipulate *therein* for a rate of interest lower as well as higher than the legal rate; so it would be unreasonable to hold that a stipulation in writing *for interest*, without specifying the rate, precludes the recovery of any interest at all before the maturity of the obligation.

The notes in controversy provide *for interest*, but do not specify the rate in language to which any legal effect can be given. Where a note is made payable *with interest*, without specifying the rate, or the time from which the interest is to be computed, the general rule is, that the note carries interest from the date of its execution at the legal rate fixed by law. In our opinion, the statute should receive a construction in harmony with this general rule of commercial law, founded as it is upon reason and justice. Such general rule gives effect to the words *with interest;* while a contrary rule would render such words of no effect,—a construction to be avoided if possible. In this case, the general rule gives effect to the intention of the parties so far as the same is intelligibly expressed; hence, we have no hesitation in adopting it. See Byles on Bills and Notes, *304; 2 Daniels on Negotiable Instruments, § 1458; *Richards v. Richards*, 2 Barn. & Adol. 456; *Campbell P. P. Co. v. Jones*, 79 Ala. 477; *Luzenberg v. Cleveland*, 19 La. An. 473.

5. It is assigned for error that the court erred in permitting the witnesses Keeney and Martin to express an opinion as to the genuineness of certain signatures purporting to be the signature of Begue to the receipts of payment offered in evidence by defendant.

When a paper purporting to be in the handwriting, or to

bear the signature, of a certain individual, is offered in evidence, a witness otherwise competent having first given evidence showing that he has had reasonable means and opportunity of becoming acquainted with the handwriting or signature of such individual, may give his opinion whether the handwriting or signature offered is or is not genuine. The weight of such opinion *as evidence* will, in general, depend upon the credibility of the witness and the extent of his means or opportunity of becoming familiar with the handwriting or signature of the individual in question; the weight of such opinion may also be affected by the testimony of other witnesses, if any, to the same point, as well as by other facts and circumstances developed at the trial, if any, bearing upon the same subject.

Keeney testified that he was a bank clerk—a teller in the bank where Begue had done business—that he had seen Begue's signature often, and had often seen him sign his name to checks. Martin testified that he was an attorney—had been attorney for Begue—had seen Begue write, and had seen him write his name frequently. Tested by the foregoing rule, it is clear that no error was committed in allowing witnesses, thus qualified, to express an opinion as to the alleged signature of Begue.

6. Error is assigned to the giving of certain instructions. The possession of the notes by plaintiff as administrator of the payee, was *prima facie* evidence that the notes were unpaid. The instruction to the jury to that effect was substantially correct. It was proper, also, to charge that a receipt, acknowledging the payment of money, is only *prima facie* evidence of payment, and that such evidence may be rebutted by competent testimony. It was proper, also, to charge that where a party relies upon a receipt as evidence of payment, the genuineness of the receipt must be proved by a preponderance of the evidence before it constitutes any evidence of payment. Thus far, the charge in relation to the receipts offered by defendant was correct, in substance. But if a person offering a receipt as evidence of payment,

shall also prove the genuineness of it by a preponderance of the evidence, his possession of the receipt should be considered *prima facie* evidence of its delivery to him by the person whose name is subscribed thereto ; .though the presumption of delivery arising from such possession may be rebutted by competent testimony.

7. The court charged the jury to the effect, that in determining the weight of the testimony given by the respective witnesses the jury had the right, and that it was their duty as jurors, to take into consideration the interest which any witness might have in the subject-matter involved in the litigation. This instruction was not improper. Both parties had testified in the case ; the evidence was conflicting as to material matters in controversy ; the jurors were the judges of the credibility of the witnesses and of the weight of their testimony ; hence, in passing upon the weight of the evidence, it was proper that the jury should take into consideration the interest which any witness or witnesses might have in the result of the suit, as well as any other fact or circumstance appearing at the trial by which the credibility of such witness or witnesses might be affected, and by which the weight of their evidence might be determined respectively.

8. The court charged the jury that the suit was brought upon two promissory notes, " one of date May 2, 1888, in the principal sum of $1,500, due thirty days after date, bearing interest from date until paid, at the rate of *one and one quarter per cent per month ;* the second of date of August 29, 1887, in the principal sum of $2,000, due twelve months after date, bearing interest at the rate of *one and one quarter per cent per annum* until its maturity ; after maturity and until June 22, 1889, bearing interest at ten per cent per annum ; after June 22, 1889, and until this date, at eight per cent per annum."

This instruction was erroneous ; it fixed the rate too high for the first note and too low for the second ; but it so happened that the higher and the lower rate practically offset

each other, and so the error was harmless. The rate of interest which the notes bore at the date of their execution (no rate being expressed) was the then existing legal rate, *ten per centum per annum*. The change of the legal rate by the act of 1889, could not affect pre-existing contracts. *Butler v. Rockwell, supra*. The amount of the notes at the date of the trial, computing the interest at the legal rate, was $4,935.79; computing according to the instruction, the notes would have amounted to $4,936.38; the verdict was $4,934.88, a variance of less than a dollar from the true amount, and only $1.50 less than the instruction called for. The maxim, *De minimis non curat lex*, applies to such discrepancies. Besides, the code requires that no judgment shall be reversed or affected by reason of any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties.

According to strict practice the complaint should have been amended so as to describe the notes as bearing interest at ten per cent per annum. When the evidence varies from the allegations of the pleadings and either party is surprised thereby, an amendment to the pleadings is allowable, and a postponement of the trial sometimes becomes necessary. But in this case, from the averments of defendant's answer as well as from the course of the trial, it is manifest that the variance between the complaint and the notes was not a matter of surprise or injury to either party, and so did not as a matter of law or fact affect their substantial rights. The execution of the notes and the liability of the defendant thereon were not controverted at the trial, except by the evidence in support of the pleas of payment. The only evidences of payment were the receipts, one for $800, one for $715, and another for $2,170. The evidence against the genuineness of the receipts was sufficient to justify the jury in determining the issues of payment against defendant; the verdict was, therefore, correct, except that it was for a sum slightly less than the amount due upon the notes; and of this defendant cannot justly complain. Code, § 78; Thompson on Trials,

§ 2401; *Gayner v. Clements*, 16 Colo. 209; *Hoagland v. Cole, ante*, p. 426; *Ballston Spa Bank v. Marine Bank*, 16 Wis. 125.

The inaccuracy of appellant's printed abstract of the record led to a reversal of the judgment in this case. Upon the rehearing, however, it appears that there is no error in the record affecting the substantial rights of the parties. Such judgment of reversal is therefore vacated and held for naught, this modified opinion is substituted in place of the former opinion herein, and the judgment of the district court is now affirmed.

*Affirmed.*