## No. 19,286.

### JOSEPH DEGESUALDO v. PEOPLE OF THE STATE OF COLORADO.
(364 P. [2d] 374)

Decided August 14, 1961.

Mr. BEN KLEIN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THIS is a companion case to No. 19,313 decided this day. Plaintiff in error, herein referred to as defendant, was separately charged and tried on evidence substantially similar to that presented against Antonio Ciccarelli in No. 19,313. Defendant was found guilty of burglary and was also found guilty of feloniously conspiring with Antonio Ciccarelli to commit burglary against the property of Fred Harsch. The transaction is the identical one in which Antonio Ciccarelli was tried and convicted.

The information against this defendant also charged him with having been convicted of felonies on two prior occasions. He was sentenced under the habitual criminal law to a term of not less than 10 years nor more than 30 years in the State Penitentiary.

The facts and evidence set forth in our opinion in *Antonio Ciccarelli v. People,* announced this day, are in most respects the same as the evidence which was introduced against the defendant here. There are some differences to be noted. Defendant was identified as having been present near the scene of the attempted burglary of the Draper Drug Store. Also, officers saw him in company with Ciccarelli both in Longmont and Loveland on the evening in question. When defendant was arrested

in Frederick, Colorado, he had $60 in new currency on his person. The evidence showed that Ciccarelli had $70 in his possession. A total of $130 in 5, 10 and 20 dollar bills was taken from the lumber company in Longmont, the subject of the burglary.

When the defendant was questioned he first denied that he had been in either Longmont or Loveland on the night in question. He stated that he had taken Ciccarelli to Denver. Later, however, he admitted that he had been in Loveland. Thereafter, he refused to answer further questions.

Numerous grounds are urged for reversal. Many of these points have been considered and determined contrary to defendant's contention in our opinion in case No. 19,313, and it is unnecessary to further discuss these questions. The contentions which have not been previously considered and which we deem sufficiently important to warrant discussion are:

1. That the court erred in allowing the prosecution to call as a witness Antonio Ciccarelli.

2. That the court erred in its ruling with respect to evidence pertaining to proof of the defendant's identity in support of previous convictions.

a. On this, defendant argues that the court erred in allowing detective Walbridge of the City and County of Denver to testify from an unidentified record card which was not introduced in evidence and in allowing Walbridge to compare that card with Exhibit B, a certified copy of the record of conviction.

b. That the court erred in allowing a fingerprint comparison between the prints on a record card which Walbridge brought with him from the identification bureau in Denver with the prints which were allegedly taken by the Sheriff of Boulder County on the occasion of the defendant's incarceration in this case. It is said that it was error to allow the comparison without proving positively that the prints were those of defendant.

I. *It was misconduct for the district attorney to call*

*Ciccarelli to the witness stand and obtain from him the claim of privilege against incrimination in the presence of the jury.*

 The district attorney had previously endorsed Ciccarelli as a witness in the case. However, there is nothing in the record which would indicate that Ciccarelli intended to testify for the prosecution. His case was set for trial at a later date. Both Ciccarelli and DeGesualdo were defended by the same counsel. Thus the question is whether the district attorney can call as a witness an accomplice or co-conspirator (where the accused is charged with conspiracy) in the hope that the accomplice will have suffered a change of heart, or in the alternative so as to get before the jury the fact that he, at least, considers that his testimony would be incriminating to him, the accomplice. The effect of such a device is clear. The jury is told of the whereabouts of the missing defendant and is also told that he at least considers it impossible to testify without incriminating himself. Does such a scene create prejudice in the minds of the jury?

To appreciate the full impact of what occurred, one has to read the actual record. Ciccarelli was called to the stand and the district attorney proceeded as follows:

"Q. Will you give your full name, please? MR. KLEIN: Your honor, I object to this proceeding, this testimony in this matter. I think the court can take judicial notice that Mr. Ciccarelli is charged with several criminal offenses which are related to this matter, and I believe his testimony would be inadmissible at this time. THE COURT: Not inadmissible. If he wants to testify he may do so.

* * *

"Q. Mr. Ciccarelli, on or about the 29th day of September, 1958, did you own an automobile? A. I refuse to testify because it might tend to incriminate me. Q. Mr. Ciccarelli, do you know the defendant, Joseph De-Gesualdo, sitting over here? A. I refuse to testify be-

cause it might tend to incriminate me. MR. DOLAN: If it please the court, the witness is invoking the Fifth Amendment, I take it. Would it be possible to ask the court that he be required to testify in this matter? THE COURT: No, under the circumstances that's his privilege. MR. DOLAN: Very well, your honor. THE COURT: If he so claims it, then he is entitled to do so. Q. Mr. Ciccarelli, on or about the 29th day of September, 1958, at approximately eight o'clock in the evening, do you know where you were? A. I refuse to testify because it may tend to incriminate me. MR. DOLAN: We have no further questions. Do you care to cross examine him?

\* \* \*

"MR. KLEIN: I move that Mr. Ciccarelli's testimony be stricken as not relevant to this matter. THE COURT: There is no testimony, nothing to strike."

It is apparent that the district attorney could not have possibly entertained a good faith belief that Ciccarelli would testify if called and thus the inference is that this was a studied attempt to bring to the attention of the jury his refusal to testify and his claim of the "Fifth Amendment." The trial court was alerted, as was the district attorney, that Ciccarelli was facing criminal charges and that he did not intend to testify, but notwithstanding this the court allowed the district attorney to call him and seemingly approved what took place. The question arising therefore is whether this staged incident, this courtroom scene, is to be ruled prejudicial to the rights of the defendant. If it could be concluded that the call of this witness was in good faith or if the court had instructed the jury to disregard the by-play, the conduct could be overlooked. But in the circumstances presented, it is impossible to conclude that such procedure did not have an adverse affect on the rights of the defendant.

■ It is fundamental, of course, that a co-defendant or accomplice is a competent witness and may be called

to testify. See *Barr v. People,* 30 Colo. 522, 71 Pac. 392. See also II *Wigmore on Evidence,* Sec. 580, 3d Ed. (1940). This, however, is not the present problem. The question is can he be called for the purpose of extracting from him a claim of privilege against incrimination.

There appears to be a paucity of authority on the exact question and we assume that this is due to the fact that district attorneys outside of Texas seldom proceed in this manner. *People v. Plyler,* 121 Cal. 160, 53 Pac. 553, appears to hold that it is not prejudicial. The reasoning of the California Court in that case has much less appeal than that of the Texas Court of Criminal Appeals in the case of *Garland v. State,* 51 Tex. Cr. Rep. 643, 104 S.W. 898. There the court brought out most clearly the point which we find disturbing, namely, the use of claim of privilege by co-defendant as a circumstance against the defendant on trial. The Court said:

"We note in the record an exception to the effect that the state placed the paramour of appellant on the stand and she claimed the privilege of being an accomplice to the crime. See *Merritt v. State,* 10 Tex. App. 402. The paramour being an accomplice, the state should not attempt to place her on the stand unless she proposes to turn state's evidence. Then it would be the duty of the court, after she should testify, to charge the law of an accomplice. But it is certainly prejudicial to appellant to place his paramour upon the stand, and wring from her a refusal to testify, and have the jury use this refusal as a circumstance of guilt against appellant. We would suggest upon another trial that this be not done."

The most recent case is that of *Washburn v. State,* 164 Tex. Cr. Rep. 448, 299 S.W. (2d) 706 (1956). There it was said:

"The trial court committed error in permitting the state to call the witness Nelson, a co-defendant, to the stand and require him to claim his privilege against self-incrimination and refuse to testify in the presence

of the jury. Such refusal could be used as an incriminating fact against the appellant."

Cited with approval were numerous other Texas cases, including *Rice v. State,* 123 Tex. Cr. Rep. 326, 59 S.W. (2d) 119. See also *Johnson v. State,* 158 Tex. Cr. Rep. 6, 252 S.W. (2d) 462.

In *United States v. Amadio* (7 Cir.), 215 F. (2d) 605, the trial court gave a cautionary instruction and because of this fact the case was not reversed. Nevertheless the comments of the reviewing Court show clearly the prejudicial aspect of an incident such as the present one when it said:

"We think it is clear that the government knew before these two witnesses were called to testify that they intended to refuse to answer the questions deemed by the government to be pertinent to the case on trial, on the ground of the constitutional privilege against self-incrimination. In view of that fact it was improper for the government to attempt to force them to testify. U. S. v. Hiss, 2 Cir., 185 F. 2d 822, 832. In the Hiss case the court told the jury, when the witness who claimed his privilege against self-incrimination, left the stand, 'to draw no inference unfavorable to this defendant because of the fact that this witness * * * has claimed immunity.' The court, 185 F. 2d at page 832, said:

" 'We do not now say that such an abuse might not occur so as to require reversal, but we find no such abuse occurred below.' "

*Commonwealth v. Granito,* 326 Mass. 494, 95 N.E. (2d) 539, also holds such conduct non-reversible where a proper instruction is given.

■ In holding that the conduct in question was reversible error, we take notice that in the public mind an odium surrounds the claim of constitutional privilege by a witness in refusing to testify on the ground that his testimony would tend to incriminate him. This is an aggravating factor. A district attorney, although in a sense a partisan, is a judicial officer sworn to uphold the con-

stitution and obligated to refrain from invalid conduct creating an atmosphere prejudicial to the substantial rights of the defendant. This and corrollary principles governing his conduct have been reiterated repeatedly in numerous of our decisions. See, for example, the discussion in *Martin v. People,* 114 Colo. 120, 162 P. (2d) 597, together with the cases there cited.

Being of the opinion that the conduct of the district attorney was prejudicial, we are constrained to hold that such conduct in view of the court's failure to prevent it, or to caution the jury to disregard it, constitutes error.

II. *The evidence in support of the habitual criminal charges was insufficient.*

C.R.S. '53, 39-13-1, requires that where the defendant denies his identity as the person previously convicted, such fact is to be proved with particularity. The statute also, of course, requires proof of former convictions and the evidence in this respect was not inadequate. Duly authenticated copies of the record of former convictions were introduced. However, the evidence offered to prove the accused to be the person previously convicted was seriously lacking. The only testimony on this latter point was given by detective Walbridge, an acknowledged expert from the identification bureau in Denver. He testified from an identification card which he had in his possession and stated that he had compared the fingerprints and photograph on that card with the fingerprints on file in the office of the Sheriff of Boulder County. He also testified that the date of conviction shown on the authenticated record from the District Court of Denver coincided with the date on his identification bureau record.

The prosecution's theory, no doubt, was that the name being unusual and coinciding with that of the previous convictions it was open for the jury to determine that DeGesualdo was the identical person previously convicted. However, assumptions cannot be indulged in this sensitive area of the law. Our decisions have consistently

required strict proof. The philosophical approach to the habitual criminal statute has always been that it is in derogation of the common law and must therefore be strictly construed. *Smalley v. People,* 116 Colo. 598, 183 P. (2d) 558. There it appeared that the defendant, through his attorney, generally admitted identity but did not do so with specific reference to each of the additional counts. The Court said:

" * * * Moreover, assuming all the emphatic implication of this record, we entertain no doubt about defendant having in fact brought down upon himself the severe penalty it provides for the safety of society. But we cannot close our eyes to the fact that this statute is drastically in derogation of the common law and hence by ancient and applicable rule must be strictly construed. It is no light thing to double and treble the maximum sentence of the criminal law, to say nothing of relegating the malefactor to a life of penal servitude for having four times stolen articles of the value of $20. All which, buttressed by our former decisions, obliges us to insist upon a strict compliance with this habitual criminal statute. *O'Day v. People,* 114 Colo. 373, 166 P. (2d) 789."

Again in *Routa v. People,* 117 Colo. 564, 192 P. (2d) 436, the Court emphasized the importance of proof of identity.

In the case at bar the court did not even require the prosecution to introduce the identification card relied on as a connecting link. Moreover, the prosecution deemed it unnecessary to identify the fingerprints taken by the Boulder County Sheriff's office as those of the defendant. This was an essential connecting link. To allow Walbridge to testify that he had made a comparison with prints purporting to be those of the defendant taken in the office of the Boulder County Sheriff was haphazard and legally inadequate. Such testimony violated the hearsay rule and was thus incompetent. See *Prosecution of Habitual Criminals,* 27 Dicta 376, and see *Melville, Manual of Criminal Evidence* 112, 2d Ed.

(1954). In the latter text the author declares (speaking of proof of foreign convictions):

"The usual practice, however, is to introduce as a witness the head of the identification unit of the foreign institution and have him testify that the fingerprint and photographic records of the accused he produces are either the originals, or true copies of the originals, kept by him in his official files according to law; and also, if he can, personally identify the accused as the same person who was confined in his institution under such conviction.

"The next step — whether the certified copy method of the personal appearance method is employed — is to use as a witness someone who has recently taken the fingerprints of the accused and have him identify them, and then have a fingerprinting expert compare the two sets of prints and testify that in his opinion they were made by the same person. See, generally, on the matter of proof of identity with foreign convictions, *People v. Reese,* 258 N.Y. 89, 179 N.E. 305, 79 A.L.R. 1329, 1332-1334."

In the case at bar no effort was made to prove by personal identity that the accused was the same person who had been previously convicted of the offenses evidenced by the records introduced. For example, the Sheriff, or the judge or the prosecuting attorney at previous trials could have testified that the accused was the one referred to in the document. The only evidence of this nature offered was the testimony of one of the police witnesses that the accused had admitted a previous conviction of non-support. Even were it to be assumed that this was the same conviction described in the information, it would not suffice because the evidence would have been inadequate to establish the confidence game conviction in Denver.

It follows that the evidence offered in support of the habitual criminal charge was inadequate and much of the testimony relied on was hearsay. This, independent

436

of the other mentioned error, requires that the cause be reversed.

One final comment is necessary with respect to the verdict returned in this proceeding. The jury was required to find in one form of verdict that the accused was the same person named in both alleged previous convictions. The two convictions should not have been packaged in one form of verdict. The jury should have been required to make a determination separately as to each of the two former convictions, because a negative finding as to one count would have rendered the determination a nullity.

The judgment is reversed and the cause remanded for a new trial or further proceedings consistent with the views expressed herein and in case No. 19,313.

MR. JUSTICE FRANTZ not participating.