SHANNON, Judge.
The appellants, Irving Kaplow and Horace Wilson, are appealing from conviction and sentence for unlawfully forging a mortgage deed with intent to defraud Edwin F. Buck and his wife, Barbara J. Several points were presented in appellants’ briefs and in their argument, but error has been shown in only one instance. We therefore limit ourselves to a discussion of this point alone, which is: Whether the trial court committed reversible error by allowing the State, over objection, to call one of the defendants being prosecuted to the stand as a witness for the State. On this point alone we are reversing this case.
The two appellants were employed by Patio’s Unlimited, Inc., a Florida corporation, which corporation was a co-defendant below. In their capacity as employees, the appellants allegedly obtained a mortgage from Mr. and Mrs. Buck for improvements made on the Bucks’ property. The Bucks, however, maintained that they signed no mortgage, and in particular, that the appellant, Wilson, had never taken their acknowledgment to a mortgage. The point with which we are concerned arose while the State was presenting its evidence. As its last witness the State called Horace Wilson, one of tire defendants, who was being tried jointly with Patio’s Unlimited and the appellant, Kaplow. Wilson was called as follows:
“MR. CAMPBELL: The State at this time will call Horace Wilson as a witness against the defendant, Patio’s Unlimited.”
The defense immediately called for a recess, and at the resumption of court, the defense attorney made a motion that the witness not be made to testify, and as grounds therefor set out: (1) that Wilson would have to give testimony which would tend to incriminate him; (2) that the testimony would be used solely to prejudice Wilson before the jury; and (3) that it would be a breach of his constitutional rights. And in addition, the defense, in the event that Wilson did have to testify, asked for a mistrial on the grounds:
“ * * * That any testimony forced by him, forced him to give, would be used against him, as well as against the other two defendants; since the State has chosen to try all three defendants together, filed a joint information, and the State must have had knowledge at the time, at the time they filed the information against the three and including the three together, that the testimony of Horace Wilson would be necessary, and in that event the State should have deleted Horace Wilson from this information, if they planned to use him as a witness. For those grounds, respectfully request *864 the Court for an order denying- the State the right to call him as a witness.”
Counsel for Wilson also stated:
.“MR. TAYLOR: Your Honor, the only thing is if he gets up there and has to take the Fifth Amendment then that is only used to prejudice.”
The prosecution stated:
“MR. CAMPBELL: It’s my right to call him and ask him any question I want to.”
The court settled this issue in the following statement:
“THE COURT: Yes, sir, he can rsfuse to testify after he gets up there. I can’t order you or this man to prohibit you from calling anybody you want. If I had that right, I don’t know where it would come from.”
Defendant Wilson was then ordered to 'take toe witness stand. Fie was asked his name and address, which he answered, but was toen asked where he was employed, which he refused to' answer on the grounds that it might tend to incriminate him. The jury was then removed, at which time Wilson was persuaded that his present employment could not possibly incriminate him. (He was not employed at that time by Patio’s Unlimited.) Therefore, upon the jury’s being called back into toe court room, he answered the question as to his present employment. However, the next question was: “Have you ever been •employed by an organization known as Patio’s Unlimited ?” Again Wilson refused to answer on the grounds that his answer ■might tend to incriminate him. The State requested the court to instruct the witness to answer, but the court refused. Wilson was then excused. Subsequently, during the presentation of the case for the defense, Wilson was called as a witness for the défense and began answering certain ■questions concerning his employment with Patio’s Unlimited. While the jury was present, the following incident took place:
“MR. CAMPBELL-. Your Honor, I move that Mr. Wilson be cited for contempt of Court. I asked him the exact—
“MR. TAYLOR: Your Honor, if the jury—
“MR. CAMPBELL: Wait a minute, and let me finish. I asked the exact question of Mr. Wilson and he refused to answer on the grounds that it would tend to incriminate him, under the Fifth Amendment of toe Constitution of the United States.”
Upon removal of the jury, defense counsel made a motion for mistrial, which was denied, the court stating at that time that it tended to think that the witness should be cited for contempt.
We realize that we have a situation here which is ordinarily left to the discretion of the trial judge. We also realize that it might be said that Wilson’s actions in taking the stand in his own behalf and answering the questions previously asked him by the State effected a waiver of any objection that he might have had to the questions as asked by the State. However, we think that the issue goes a bit further than this; we feel that when a defendant is required by the State to take the stand, and is asked questions which the State knows full well the witness will refuse to answer, this defendant, as well as his hapless co-defendants, has been prejudiced in the eyes of toe jury to toe extent that a fair trial is impossible. It may be unfortunate, but it is nevertheless a truism that there is an onerous stigma attached to a defendant’s claiming his privilege under the Fifth Amendment. And when the defendant is forced to stigmatize himself and his co-defendants, in the presence of the jury, due to the conduct of the State in using such tactics, said defendant has been irreparably prejudiced.
*865 There is much case law on similar situations, but on this exact question there seems to be a paucity of authority. In 86 A.L.R.2d 1443 there is an annotation entitled, “Prejudicial effect of prosecution’s calling as witness, to extract claim of self-incrimination privilege, one involved in offense with which accused is charged.” In this annotation the author sets out a certain combination of facts and circumstances which the courts have held as a prerequisite for reversal in a situation such as this. It must appear directly or infer entially:
“ * * * (1) that the witness appears to have been so closely implicated in the defendant’s alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness’ complicity, which will, in turn, prejudice the defendant in the eyes of the jury; (2) that the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to' waive it, and, therefore, called him in bad faith and for an improper purpose; (3) that the witness had a right to invoke his privilege; (4) that defense counsel made timely objection and took exception to the prosecutor’s misconduct; and (S) that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury. * * * ”
After a careful study of the record, it is evident that the present case falls clearly within this set of circumstances. Wilson was not only a witness, but was also a co-defendant with Kaplow; and it is patent that his refusal to answer the State’s questions prejudiced not only himself, but Kap-low as well. This is particularly true in view of the fact that it is reasonably inferential that the prosecutor knew that the witness would claim his privilege, and also knew that any testimony in regard to the witness or the company would be detrimental to the witness’s rights and interests. It is obvious, where there are several defendants being tried at the same time for the same offense, and one of the defendants is forced by the State to take the witness stand, presumably to testify against the others, and is thereby forced to plead the “Fifth Amendment,” that this is prejudicial not only to himself but to every other defendant.
In the case of De Gesualdo v. People, 1961, 147 Colo. 426, 364 P.2d 374, 86 A.L.R.2d 1435, the defendant was being tried for burglary and conspiracy to commit burglary, and the prosecution called the defendant’s co-conspirator to the stand, which action was objected to by defense counsel. Upon being ordered to take the stand, the witness refused to testify upon the grounds that it might tend to incriminate him. On appeal the court phrased the question to be answered as: “ * * * whether the district attorney can call as a witness an accomplice or co-conspirator (where the accused is charged with conspiracy) in the hope that the accomplice will have suffered a change of heart, or in the alternative so as to get before the jury the fact that he, at least considers that his testimony would be incriminating to him, the accomplice. * * * ” The court held that the district attorney could not possibly have entertained a good faith belief that the co-conspirator would testify if called, thus leading to the inference that this was a studied attempt to bring to the attention of the jury his refusal to testify and his claim of the “Fifth Amendment.” The court also discussed various cases consonant with its opinion and reversed on the ground that the defendant had been unduly prejudiced by the actions of the district attorney.
The Florida Constitution, Declaration of Rights, Sec. 12, F.S.A., states that: “No person shall be * * * compelled in any criminal case to be a witness against *866 himself, * * * ” And Sec. 918.09, Fla. Stat., F.S.A., states that “ * * * no accused person shall be compelled to give testimony against himself, nor shall any prosecuting attorney be permitted before the jury or court to comment on the failure of the accused to testify in his own behalf, * * It is obvious that any testimony given by Wilson in regard to the corporate defendant or the other individual defendant would be testimony which could be held against Wilson himself. The record shows that defense counsel made timely objection, took exception to the prosecutor’s conduct, and moved for mistrial in the event that Wilson be required to testify. We realize that the language in some opinions in states other than Florida seems to indicate that the question we have here is left entirely up to the discretion of the trial judge. We believe, however, that we are following the majority opinion when we hold that the incidents in the instant case go beyond the discretion of the trial court and are as a matter of law reversible error. Texas happens to have a number of cases wherein the general rule is stated. For instance, McClure v. State, 1923, 95 Tex.Cr.R. 53, 251 S.W. 1099, which is widely cited by the later cases in Texas, contains the following pertinent statement:
“Every man has a constitutional right to decline to give testimony which would incriminate him, and it is held that, if he declines to testify, no inference of guilt may be drawn from his refusal to answer. Owen v. State, 7 Tex.App. [329,] 334. Certainly, if no inference of guilt can be indulged against the man who declines to testify, none could be drawn as to the guilt of a codefendant. Appellant should not in any way be held accountable for the refusal of Mc-Comber to give testimony. If the state’s purpose in putting this witness on the stand was to compel or invite his refusal to testify, in order to' use this as an incriminating fact against appellant, the state was guilty of an injustice.”
Two recent federal court decisions on this matter are United States v. Tucker, 267 F.2d 212 (3d Cir. 1959); and United States v. Maloney, 262 F.2d 535 (2d Cir. 1959). See also, United States v. Hiss, 185 F.2d 822 (2d Cir. 1950), cert. denied, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683; and United States v. Five Cases, 179 F.2d 519 (2d Cir. 1950), cert. denied, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372.
We feel that reason and justice, as represented by the better and majority view, requires us to hold that the appellants in this case suffered irreparable damage and injury in the eyes of the jury by Wilson’s being ordered to take the stand and thereby being forced to plead the Fifth Amendment. The appellants could not possibly have received a fair trial under these circumstances, and the case must be reversed for a new trial.
Reversed and remanded.
ALLEN, Acting C. J., and McMULLEN, NEIL C., Associate Judge, concur.