0 19CA0964 Peo v Balog 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0964 Jefferson County District Court No. 17CR4178 Honorable Todd L. Vriesman, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Stephen Joseph Balog, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division VI Opinion by JUDGE WELLING Fox and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Sarah Spears, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
1 ¶ 1 Stephen Joseph Balog appeals his conviction for felony driving under the influence (DUI) – fourth or subsequent offense. Based on Linnebur v. People, 2020 CO 79M, we reverse the conviction and sentence for felony DUI and remand with directions. I. Background ¶ 2 Balog was discovered in the parking lot of the Arvada Apex Recreational Center (rec center) asleep in the driver’s seat of his car, with the engine running and car stereo playing. The manager of the rec center saw Balog in his car and tried but was unable to wake him up. After asking another rec center employee to call 911, the manager leaned into the car, turned off the engine, and pulled the key out of the ignition. While turning off the car, the manager saw a vodka bottle on the front passenger seat of the car with “about a quarter inch” of liquid in it. ¶ 3 Responding to the 911 call, an Arvada police officer arrived on the scene at 3:01 p.m. The officer suspected that Balog was intoxicated because he was off-balance and slurring his words, and he smelled strongly of alcohol. The officer also saw another vodka bottle in Balog’s car; this one was described by the officer as being “two-thirds full.” Balog informed the officer that he had drunk less 
2 than half of a pint of vodka at 9 a.m. that morning. The officer asked Balog to complete voluntary roadside maneuvers; Balog refused. The officer then took Balog into custody on suspicion of DUI. After Balog was in custody, the officer read Balog the express consent advisement, telling him that he had the option to take a blood or breath test or refuse both, and that if he refused both that his driving privileges may be revoked. Balog refused to take either the blood or breath test. ¶ 4 Balog was charged with felony DUI – fourth or subsequent offense. Balog’s defense at trial was that he wasn’t driving but the jury found him guilty of DUI. After the jury returned its verdict, the court found, by a preponderance of the evidence, that Balog had three prior DUI convictions, elevating the misdemeanor DUI conviction to a felony. The court sentenced Balog to 120 days in jail, four years of probation, and 48 hours of useful public service. Balog now appeals. II. Contentions on Appeal ¶ 5 Balog contends that the trial court erred when it  refused to admit his statement to the paramedic that he wasn’t driving; 
3  admitted evidence of his refusal to perform voluntary roadside maneuvers;  gave a jury instruction that drew “improper attention” to his refusal to complete a blood or breath test;  found that the People had presented sufficient evidence to prove that he had at least three prior drinking and driving related convictions; and  decided the question of whether he had prior alcohol-related driving convictions, rather than submitting the question to the jury. ¶ 6 He also contends that cumulative effect of these alleged errors warrants reversal. We address each contention, in turn, below. A. Balog’s Statement that He Wasn’t Driving ¶ 7 Balog first contends that the trial court erred when it refused to admit, under the rule of completeness, his statement to a paramedic that he wasn’t driving. We discern no error. 1. Additional Facts ¶ 8 During trial, the manager of the rec center testified regarding her interaction with Balog after she discovered him in the parking 
4 lot. On direct examination, she was asked about what Balog said to her, and she testified that he told her that  the vodka bottle in the car was “not the first one he had”;  he’d “gone through a divorce, lost custody of his kids, and that his mother died”;  he’d spent the previous night in the cemetery; and  he’d come to the rec center to shower. ¶ 9 On cross-examination, the rec center manager was asked about a later conversation she had overheard between Balog and a paramedic. Specifically, defense counsel asked, “He also stated that when . . . asked another question from the paramedic, that he wasn’t driving, so it didn’t matter how much he drank, right?” The prosecutor objected on the grounds that the question called for hearsay and was beyond the scope of direct examination. Defense counsel argued that the statement should be admitted under the rule of completeness. The court sustained the objection, finding that defense counsel’s question called for inadmissible hearsay and the rule of completeness didn’t apply. 
5 2. Standard of Review ¶ 10 We review a trial court’s evidentiary ruling for an abuse of discretion. Dunlap v. People, 173 P.3d 1054, 1097 (Colo. 2007). “A trial court abuses its discretion when its ruling is (1) manifestly arbitrary, unreasonable, or unfair or (2) based on an erroneous understanding or application of the law.” People v. Casias, 2012 COA 117, ¶ 17. 3. Analysis ¶ 11 On appeal, Balog contends that the statement that he wasn’t driving should have been admitted by the trial court under the rule of completeness because the statement provides context for Balog’s earlier statements to the rec center manager regarding how much he had to drink. The People argue that the rule of completeness doesn’t apply to oral statements and that even if it did apply to oral statements, it wouldn’t apply here because the second statement was made later and to a different party than the first statement. We agree with the People’s second contention. ¶ 12 The rule of completeness, promulgated in CRE 106, provides that “[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that 
6 time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.” In People v. Short, 2018 COA 47, ¶ 46, a division of this court interpreted the rule of completeness to permit the admission of “otherwise inadmissible self-serving hearsay” when it is necessary “to qualify, explain, or place into context the evidence proffered by the prosecution.” ¶ 13 Balog contends that because the prosecution admitted the various incriminating statements that he made to the rec center manager, he was entitled to elicit his exculpatory statement to a paramedic purportedly overheard by the rec center manager. But his inadmissible hearsay statements to the paramedic (as purportedly overheard by the rec center manager) don’t qualify, explain, or place into context his admitted incriminating statements to the rec center manager. ¶ 14 Balog’s reliance on Short for the proposition that the trial court erred is misplaced. In Short, the defendant was charged with sexual assault of a child. During trial, the prosecution introduced a statement the defendant made to a detective in which he admitted that it was his understanding that “someone’s abusing [the victim].” 
7 Id. at ¶ 34. The prosecution, however, opposed the admission of what the defendant said immediately after: “[b]ut it ain’t me.” Id. On appeal, a division of this court concluded that the defendant’s otherwise inadmissible “self-serving hearsay” was admissible under the rule of completeness to qualify, explain, or place into context the portion of the statement admitted at the prosecution’s urging. Id. at ¶¶ 46-51. ¶ 15 The two statements in Short — “someone’s abusing [the victim]” and “but it ain’t me” — were really two halves of a single statement. The statements were made by the defendant to the same person during the same conversations. And the admission of the first part without the second creates a misleading impression. The same can’t be said of Balog’s statements. The statements were made to different people at different times, and the statement to the paramedic isn’t necessary to complete anything the rec center employee testified to on direct as to what she observed or heard. Put differently, nothing about Balog’s later protestation to the paramedic that he wasn’t driving places in context or explains his earlier incriminating statements to the rec center manager. And there was nothing unfair or misleading about admitting one set of 
8 statements and excluding the other since, again, the rec center employee didn’t testify to anything Balog said or was overheard saying to the paramedic. Accordingly, the trial court didn’t abuse its discretion when it sustained the objection to the admission of the inadmissible hearsay statement that Balog made to the paramedic. B. Refusal to Complete Voluntary Roadside Sobriety Maneuvers ¶ 16 Balog next contends that the trial court erred when it admitted evidence of his refusal to complete voluntary roadside maneuvers, arguing on appeal that the admission of this evidence violated his constitutional right to refuse a warrantless search. We reject this contention. 1. Additional Facts ¶ 17 On the morning of the first day of trial, defense counsel raised the following objection to the admission of Balog’s refusal to participate in voluntary roadside maneuvers: I was asking for the Court to preclude the mention of a refusal to do roadside maneuvers. Not necessarily the subsequent test. But I believe that the defendant has a right to refuse to comment on exercise — his right to not participate or remain silent in that regard 
9 for the preliminary roadside maneuvers which violates his 14th, 5th and 6th Amendment rights, as well his rights to remain silent and due process under the Colorado Constitution. ¶ 18 After hearing argument from the prosecutor, which included noting that defense counsel had simply “cited a number of constitutional amendments, without any specific argument,” the court overruled the objection. ¶ 19 During the examination of an investigating officer, the prosecutor elicited the following testimony: Q: Now, did you ask the defendant if he would do the roadside tests? A: I did. Q: . . . [E]xplain when you ask somebody to do roadside tests, what are you asking about? . . . . A: . . . . They’re voluntary field sobriety maneuvers. It’s different maneuvers that have a lot of backing to them wherein we can determine, with some level of — some percentage of confidence — at where the person’s blood alcohol content is based upon the indicators that we would see. So what I asked is would he be willing to participate in these voluntary field sobriety maneuvers to determine what his level of impairment was. I certainly never want to coerce anyone into doing that. So after asking him, I told him 
10 they’re completely voluntary; I’m not making you do them, not forcing you to. Q: And how did the defendant respond? A: He stated he did not want to participate in the maneuvers. ¶ 20 During closing, the prosecutor made the following argument: [Balog] was also given the opportunity by Officer Grimes both for a chemical test and roadside tests to show that he was not intoxicated, and that he could safely operate a motor vehicle. He declined. That is his right. He does not have to do either test. But that is something you can consider . . . when given the opportunity to show that he was not driving under the influence or driving while ability-impaired, he declined to take that opportunity to show that. 2. Preservation and Standard of Review ¶ 21 As a threshold matter, we need to determine whether the argument Balog advances on appeal is preserved for our review. Balog argues that this issue was preserved when his counsel requested that the trial court preclude the mention of his refusal to complete voluntary roadside maneuvers because admitting such evidence would violate his rights “under the 14th, 5th, and 6th” Amendments to the United States Constitution. Those amendments protect a defendant’s due process rights, right against 
11 self-incrimination, and right to counsel. Defense counsel’s objection at trial omitted any reference to the 4th Amendment or the right to be free from a warrantless search — which is the claim Balog advances on appeal. ¶ 22 An issue is unpreserved for review when “an objection or request was made in the trial court, but on grounds different from those raised on appeal . . . or on unspecific grounds which would not have alerted the trial court to the issue of which the defendant now seeks review.” People v. Ujaama, 2012 COA 36, ¶ 37 (first citing People v. Renfro, 117 P.3d 43, 47 (Colo. App. 2004); then citing People v. Rodriguez, 209 P.3d 1151, 1156 (Colo. App. 2008)). Both circumstances are present here. Accordingly, Balog’s contention on appeal is unpreserved. ¶ 23 Because the issue Balog advances on appeal wasn’t preserved, we review for plain error. Hagos v. People, 2012 CO 63, ¶ 14. “Plain error is obvious and substantial.” Id. An error is obvious if it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. Scott v. People, 2017 CO 16, ¶ 16. “[A]n error is generally not obvious when nothing in Colorado 
12 statutory or prior case law would have alerted the trial court to the error.” Id. at ¶ 17. 3. Analysis ¶ 24 The major premise of Balog’s argument is that performing roadside sobriety maneuvers is a search under the Fourth Amendment. This is true (and clearly established). See People v. Carlson, 677 P.2d 310, 317 (Colo. 1984) (“Roadside sobriety testing constitutes a full ‘search’ in the constitutional sense of that term and therefore must be supported by probable cause.”). Balog’s minor premise is that because roadside sobriety testing is a constitutional search, a warrant is required before it can be demanded or a refusal admitted. That proposition isn’t similarly supported. Indeed, Balog points to no authority in Colorado that has held that a warrant is required. ¶ 25 And McGuire v. People, 749 P.2d 960 (Colo. 1988), fatally undermines any contention that the trial court obviously erred by admitting of Balog’s refusal to participate in roadside testing. In McGuire, “[d]uring the course of the trial, evidence of the [defendant’s] refusal to perform the roadside sobriety tests was admitted into evidence over his objection.” Id. at 960. The court in 
13 McGuire held the trial court didn’t err in admitting evidence of the defendant’s refusal to perform voluntary roadside sobriety tests. In reaching this conclusion, McGuire recognized that there is no statute conferring a right to decline to perform roadside sobriety maneuvers when the arresting officer has probable cause to believe that the suspect had been driving under the influence of intoxicating liquor. Id. at 962-63. Based on this, “this case does not present a situation in which the evidentiary use of the driver’s refusal to perform the roadside tests might impermissibly burden a constitutional or statutory right.” Id. at 963; cf. Fitzgerald v. People, 2017 CO 26, ¶ 26 (holding that introducing evidence of a defendant’s “refusal to consent to a blood or breath test to determine his BAC d[oes] not impermissibly burden his Fourth Amendment right”); People v. Hyde, 2017 CO 24, ¶ 27 (“[T]here is no constitutional right to refuse a blood-alcohol test.”). ¶ 26 Balog contends that courts that have read Carlson to support the proposition that only probable cause — and not also a warrant — is required for an officer to request that a suspect participate in roadside sobriety maneuvers are misreading that case. Indeed, he further argues in his brief that the cases relying on Carlson 
14 “conclude that roadside tests may occur only based on probable cause are wrongly decided.” Even if Balog’s arguments in this regard were correct, he doesn’t explain how the alleged error could be obvious in light of McGuire. See People v. Smith, 2018 CO 33, ¶ 24 (“To qualify as plain error, an error must generally be so obvious that a trial judge should be able to avoid it without the benefit of an objection.” (quoting Scott, ¶ 16)); People v. Mendoza, 313 P.3d 637, 641 n.4 (Colo. App. 2011) (observing that an error cannot be plain if “nothing in our statutes or previous case law would have alerted the [trial] court” to the error). ¶ 27 Simply put, because McGuire is still good law, the trial court’s admission of Balog’s refusal wasn’t obvious error. Therefore the trial court couldn’t have plainly error by admitting evidence of Balog’s refusal to perform voluntary roadside maneuvers. C. Jury Instruction ¶ 28 Balog next contends that the trial court erred when it gave a jury instruction that drew “improper attention” to his refusal to complete a blood or breath test. 1. Standard of Review ¶ 29 The court gave Jury Instruction 15: 
15 You are instructed that any person who drives any motor vehicle in the State of Colorado may be required to submit to a chemical test for the purpose of determining the alcoholic content of his or her blood. If you find that the defendant refused to take a chemical test of the defendant’s blood or breath, you may consider this refusal along with other evidence in determining whether the defendant is guilty of the offense of Driving Under the Influence. ¶ 30 Balog didn’t object to this instruction during trial and therefore this issue is unpreserved and we review for plain error. Hagos, ¶ 14. 2. Analysis ¶ 31 Balog argues that the trial court’s instruction was improper because it highlighted a particular piece of evidence — namely, his refusal to complete chemical tests. The court’s decision to give the instruction wasn’t error and certainly not plain error. ¶ 32 Our supreme court in Cox v. People, 735 P.2d 153 (Colo. 1987), held that a similar instruction to the one given in this case was appropriate. The instruction at issue in Cox read as follows: If a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in 
16 determining the Defendant’s guilt or innocence. Id. at 155. A defendant in Cox challenged the instruction, but the supreme court held that “the trial court did not err in denying [defendant’s] objection to the jury instruction that allowed his refusal to take the test to be considered along with other evidence in determining his guilt or innocence.” Id. at 159. ¶ 33 Cox remains good law, and Balog doesn’t contend otherwise. Nor does he dispute that the instruction the court gave in this case is consistent with the one reviewed in Cox. Instead, he contends that because the defendant in Cox advanced a different objection to the instruction — namely, that such evidence was irrelevant and unduly prejudicial — as opposed to Balog’s argument on appeal — that the instruction improperly highlighted evidence — Cox isn’t controlling here. We simply aren’t persuaded that general admonitions against instructions highlighting particular evidence are sufficient to render the giving of an instruction repeatedly reviewed with approval can constitute obvious error. See People v. Mersman, 148 P.3d 199, 201 (Colo. App. 2006) (interpreting Cox to mean that the jury may be instructed to “consider a driver’s refusal 
17 to take a blood or breath test, along with other evidence, in determining his or her guilt of driving under the influence”); cf. Scott, ¶ 17 (“[A]n error will not ordinarily be deemed ‘obvious’ when either this court or a division of the court of appeals has previously rejected an argument being advanced by a subsequent party who is asserting plain error.”). ¶ 34 Because Cox is still good law and because we can find no case law, statute, or rule disapproving of the instruction, the trial court’s decision to give the challenged instruction wasn’t erroneous (and couldn’t have been obviously so). Accordingly, we reject Balog’s challenge to Jury Instruction 15. D. Sufficiency of Evidence of Prior Convictions ¶ 35 Balog next contends that the prosecution failed to prove he was convicted of the prior offenses because the records admitted at trial to prove his prior convictions didn’t include any photographs or fingerprints and the prosecution didn’t introduce any testimony 
18 that descriptions of the defendant in the records matched Balog. We aren’t persuaded.1 ¶ 36 We review the sufficiency of the evidence de novo. Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010). In doing so, we must determine whether the evidence, “direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant” is the person who was convicted of the prior offenses. People v. Carrasco, 85 P.3d 580, 582 (Colo. App. 2003). The prosecution must be given the benefit of every reasonable inference that could fairly be raised by the evidence. Id. at 582-83. 1 As discussed in the next part of the opinion, pursuant to Linnebur v. People, 2020 CO 79M, we reverse Balog’s felony DUI conviction. And if retrial is pursued, the prosecution will be required to prove Balog’s prior convictions to a jury beyond a reasonable doubt. Id. at ¶ 31. We, however, review Balog’s sufficiency of the evidence claim — which, if successful would bar retrial for felony DUI — based on the standard that applied at trial, which was preponderance of the evidence. See McDonald v. People, 2021 CO 64, ¶ 67 (“Because the prosecution didn’t have notice of these requirements, it cannot be held responsible for failing to muster evidence sufficient to satisfy a standard that, at the time of trial, didn’t need to be met.”). 
19 ¶ 37 At trial, Balog’s prior convictions were treated as a sentence enhancer that was required to be proven by a preponderance of the evidence. See, e.g., People v. Schreiber, 226 P.3d 1221, 1223-24 (Colo. App. 2009) (holding that when a prior conviction is a sentence enhancer and the sentencing statute doesn’t establish a burden of proof, “the prosecution need only prove the existence of prior conviction facts by a preponderance of the evidence”). Because the preponderance of the evidence standard applied at trial, the prosecution was required to prove that it was more probable than not that Balog was the person convicted of the prior offenses. People v. Garner, 806 P.2d 366, 370 (Colo. 1991) (“A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence.”). ¶ 38 At trial, the prosecution presented the following records of Balog’s prior convictions, which the court admitted into evidence:  a certified sentencing order and register of actions for a 2010 conviction for DUI in Adams County case number 10T9092; 
20  a certified sentencing order and register of actions for a 2014 conviction for DUI in Jefferson County case number 13T9126; and  a certified sentencing order and register of actions for a 2014 conviction for driving while ability impaired (DWAI) in Jefferson County case number 14T1533. ¶ 39 Each record included defendant’s full name (Stephen Joseph Balog), a date of birth matching Balog’s, and descriptions of the defendant’s sex, race, height, weight, and hair color that matched the biographical information for Balog contained in the complaint and information, as well as his booking photo in this case. ¶ 40 Relying on De Gesualdo v. People, 147 Colo. 426, 364 P.2d 374 (1961), and People v. Cooper, 104 P.3d 307 (Colo. App. 2004), Balog contends that the prosecution didn’t present sufficient evidence of a link between him and the prior convictions. Balog’s reliance on these cases is misplaced. Both De Gesualdo and Cooper are habitual criminal cases, and, under the habitual offender statute, the prior convictions must be proven by a stricter burden of proof than applied here at trial. See De Gesualdo, 147 Colo. at 433-34, 364 P.2d at 378 (“Our decisions have consistently required strict 
21 proof. The philosophical approach to the habitual criminal statute has always been that it is in derogation of the common law and must therefore be strictly construed.”); Cooper, 104 P.3d at 310 (noting that for the habitual offender statue — which was the statute at issue — “the prosecution must prove beyond a reasonable doubt that the accused is the person named in the prior convictions”). ¶ 41 In contrast, all that was required at the time of trial in this case was proof by a preponderance of the evidence. See, e.g., People v. Wilson, 2013 COA 75, ¶ 45 (rejecting the contention a sentence enhancer is akin to a finding that a defendant was a habitual criminal, “which requires the prosecution to prove, beyond a reasonable doubt, that the defendant has been previously convicted of a designated number of felonies”). Reviewing the evidence as a whole and in the light most favorable to the prosecution, as we must, the evidence was sufficient to establish, by a preponderance of the evidence, that Balog had suffered three prior alcohol-related driving convictions. Accordingly, a failure of the sufficiency of the evidence isn’t a bar to retrial on the felony DUI charge. But our analysis here shouldn’t be interpreted as commenting on whether 
22 De Gesualdo or Cooper would apply to a prior conviction finding going forward now that the prior DUI/DWAI convictions must be tried to a jury and proven beyond a reasonable doubt. E. Felony DUI ¶ 42 Balog contends that the trial court erred in finding by a preponderance of the evidence that he had at least three prior alcohol-related driving convictions rather than submitting the issue to the jury for it to decide beyond a reasonable doubt. He’s correct. ¶ 43 Indeed, Linnebur requires that we reverse Balog’s felony DUI conviction. On remand, the district attorney may elect to retry Balog on the felony charge, and if Balog raises a double jeopardy objection the district court should address it. Linnebur, ¶ 32. If, however, the district attorney chooses not to retry Balog on the felony charge, the trial court should, given our rejection Balog’s other contentions of error, enter a conviction and sentence for misdemeanor DWI. Id. F. Cumulative Error ¶ 44 Finally, Balog contends that doctrine of cumulative error necessitates reversal. “For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that 
23 collectively prejudice the substantial rights of the defendant, even if any single error does not.” Howard-Walker v. People, 2019 CO 69, ¶ 25 (citing Crim. P. 52). “Stated simply, cumulative error involves cumulative prejudice.” Id. ¶ 45 Balog’s primary defense at trial was that he wasn’t driving. Of the three evidentiary errors alleged on appeal, only one had any bearing on whether he was driving — namely, his contention that the court erred when it refused to admit his statement to the paramedic. But we’ve concluded that the trial court didn’t err in this regard. The other two alleged errors related to whether Balog was intoxicated; we rejected these contentions. We reject that together they could amount to cumulative error because, even in the aggregate, these alleged errors don’t establish “the absence of a fair trial.” Id. at ¶ 26 (discussing Oaks v. People, 150 Colo. 64, 66, 371 P.2d 443, 446 (1962)). We reach this conclusion because between Balog’s admissions, the bottles of alcohol found at the scene, and the witnesses’ observations of Balog, the evidence of Balog’s intoxication was overwhelming. 
24 III. Conclusion ¶ 46 The judgment of conviction for felony DUI is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. JUDGE FOX and JUDGE JOHNSON concur.