The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Carlos **CARRASCO,** Defendant–Appellant.

No. 01CA1457.

Colorado Court of Appeals, Div. II.

Aug. 28, 2003.

Certiorari Denied March 8, 2004.

City and County of Denver District Court No. 99CR3951, Joseph E. Meyer, III, Judge and Herbert L. Stern, III, Judge.

Ken Salazar, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Carlos Carrasco, appeals the judgment of conviction entered upon a jury verdict finding him guilty of criminal mischief and his adjudication following a bench trial as a habitual criminal. He also appeals that part of his sentence imposing a period of mandatory parole. We affirm the judgment of conviction, but remand for correction of the mittimus to reflect discretionary parole.

## I.

Relying on *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), defendant contends that the habitual criminal act, § 18–1.3–801, et seq., C.R.S.2002 (formerly § 16–13–101), is unconstitutional because it allows a judge, not a jury, to find facts that increase a defendant's sentence beyond that authorized by the jury's verdict. We disagree.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, 455 (2000), the Supreme Court stated: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court thus maintained the "prior conviction exception" to the jury adjudication requirement first established in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which permits a judge to make findings regarding prior convictions and thereby increase the penalty for a crime.

As a result, a division of this court has held that there is no right to a jury trial in habitual criminal proceedings and thus the statute authorizing the court to determine habitual criminality issues does not violate the Sixth Amendment or Colo. Const. art. II, § 16. *People v. Johnson*, 74 P.3d 349 (Colo. App.2002).

Defendant contends that *Ring* eliminates the prior conviction exception. We are not persuaded.

In *Ring*, the Supreme Court overturned Arizona's death penalty statute, which had allowed a judge to find aggravating factors warranting the death penalty, because Arizona's enumerated aggravating factors operated as the functional equivalent of an element of a greater offense. The Court held the Sixth Amendment requires such factors to be found by a jury.

As defendant asserts, previous conviction was specified as an aggravator in three of the factors listed in the Arizona death penalty statute. However, the *Ring* Court explicitly noted that the defendant had no aggravating circumstance related to past convictions and that he therefore did not challenge *Almendarez–Torres* and the prior conviction exception. Hence, *Ring* is inapposite.

Moreover, notwithstanding remarks made by some individual Justices criticizing *Almendarez–Torres*, and even though the *Ring* Court did not restate the prior conviction exception in its opinion, the Court has not yet overruled or limited it. Until it does so, the previous conviction exception remains viable.

Accordingly, we reject defendant's contention.

## II.

Defendant next contends there was insufficient identification evidence to prove the habitual criminal counts because the prosecution only offered fingerprint evidence that was attached to his arrest record, and it did not produce Department of Corrections fingerprint cards associated with each prior conviction. Specifically, defendant contends that while the prosecution's evidence establishes he was arrested in connection with the prior cases, it does not establish that he was the person who was actually convicted. We disagree.

A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly

be drawn from the evidence. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Tafoya,* 985 P.2d 26 (Colo.App.1999).

■ In habitual criminal proceedings, the prosecution bears the burden of proving beyond a reasonable doubt that the accused is the person named in the prior convictions. *People v. Bernabei,* 979 P.2d 26 (Colo.App. 1998).

■ Offering evidence of fingerprint cards and expert testimony linking those prints to the defendant is a valid method for proving the identity element, but it is not the only way to show identity. Section 18–1.3–802, C.R.S.2002; *People v. Bernabei, supra.*

Here, the prosecution offered the testimony of a Denver Police Department (DPD) fingerprint examiner. He testified that when a person is arrested, he or she is fingerprinted and a master fingerprint card with a unique DPD number is kept on file. When that person is subsequently arrested, the fingerprints are compared to the master card to verify identity.

The prosecution presented evidence that the DPD had a master card for a Carlos Carrasco with a DPD number 483047. The fingerprint examiner testified he had fingerprinted defendant during the trial in this case, and after comparing his fingerprints with the master card, determined he was the same person who had been fingerprinted for master card 483047.

The prosecution also offered the arrest record of Carlos Carrasco bearing DPD number 483047, which referenced two prior cases: 99CR1705 and 98CR3266. Again, the fingerprint examiner found the prints attached to the arrest record for those cases to be the same as those taken from defendant. The prosecutor also offered certified copies of the convictions in cases 99CR1705 and 98CR3266, as well as transcripts of the providency and sentencing hearings in those cases.

The trial court found that the fingerprint evidence, the DPD number, and the circumstantial evidence from the submitted transcripts demonstrated defendant was the same person convicted and sentenced in the two previous cases.

Despite the fact that fingerprint evidence was not attached to defendant's conviction record, we are satisfied that the evidence presented was sufficient to allow a reasonable fact finder to determine, beyond a·reasonable doubt, that the defendant was the same Carlos Carrasco who had been convicted of the two previous felonies. The DPD number linked defendant to the two previous felony convictions. Further, the fingerprints linked to the DPD number matched those taken from defendant during the trial here.

■ Defendant nonetheless argues that his DPD number only appears on the charging document submitted with the mittimuses, not on the mittimuses themselves, and that the charging document is hearsay and thus was improperly considered. He asserts that the charging document does not fall within the exception to the hearsay rule contained in CRE 803(8) because it does not set forth the activities of the court, the court did not observe the contents set forth in the charging document, and it had no duty to report on it. We disagree.

■ Because defendant did not object to the document's admission during the hearing, we review for plain error. Plain error exists when an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

CRE 803(8)(A) provides that, unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, are admissible as an exception to the hearsay rule. *See Leiting v. Mutha,* 58 P.3d 1049 (Colo.App.2002).

Here, the charging document sets forth the activities of the Denver District Attorney's office and thus was admissible under CRE 803(8)(A). It does not matter that the document was created by the Denver District Attorney, but was taken and certified from

the district court records. *See People v. Copeland,* 976 P.2d 334 (Colo.App.1998)(properly authenticated copies may originate from public agencies other than those in which the records reside), *aff'd,* 2 P.3d 1283 (Colo.2000). Hence, there was no error, let alone plain error.

## III.

Defendant contends the court erred in refusing to suppress identification testimony concerning an impermissibly suggestive photographic array. We disagree.

■ To determine the admissibility of out-of-court photographic identifications, a court must consider whether the defendant has demonstrated that the array was impermissibly suggestive. If the defendant has not met this burden, no further inquiry is necessary. If the defendant meets this burden, then the prosecution must show that the identification was nevertheless reliable under the totality of the circumstances. *People v. Borghesi,* 66 P.3d 93 (Colo.2003).

■ Relevant factors in determining whether a pretrial photographic identification procedure is impermissibly suggestive include the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves. *Bernal v. People,* 44 P.3d 184 (Colo.2002).

■ An array containing as few as six pictures is not per se a due process violation, although the fewer pictures in an array, the closer the array must be scrutinized for suggestive irregularities. *Bernal v. People, supra.*

■ If the number of photographs is not so small as to make the array impermissibly suggestive, and there is nothing suggestive in the manner of the official's presentation of the array, then the remaining consideration is whether the photographs in the array are so limited that the defendant is the only one to match the witness's description of the perpetrator. *People v. Borghesi, supra.*

■ The police do not have to provide a photo array containing only "exact replicas" of the defendant's picture. Rather, all that is required is that the photos be matched by race, approximate age, facial hair, and a number of other characteristics. *Bernal v. People, supra; People v. Webster,* 987 P.2d 836 (Colo.App.1998).

The ultimate question as to the constitutionality of pretrial identification procedures is a mixed question of law and fact. Thus, while the trial court's findings of historical fact are entitled to deference, we may give different weight to those facts and may reach a different conclusion in light of the legal standard. *Bernal v. People, supra.*

■ Here, the photo array contained six photographs. All the men in the array are the same race and approximate age, have the same type of facial hair, and share many facial characteristics. Defendant correctly points out that the exposure in his photograph is darker than that in the other five photographs. However, the similarity of the men in the photographs, and the fact that the witnesses using this photographic array already knew defendant, compensate for any difference in this regard. *See People v. Borghesi, supra,* 66 P.3d at 105 (differences in shade and tone of a defendant's photograph do not by themselves render an array impermissibly suggestive).

Because the array was not impermissibly suggestive under these circumstances, we need not address the second prong of the *Borghesi* test.

## IV.

Defendant next contends the trial court erred by imposing a period of mandatory parole. We agree.

■ Pursuant to *People v. Falls,* 58 P.3d 1140 (Colo.App.2002), individuals who are sentenced as habitual criminals are subject to the discretionary parole statute, § 17-2-201(5)(a), C.R.S.2002.

Here, the court imposed an eighteen-year prison term with three years of mandatory parole. Hence, we must remand for correction of the mittimus to specify that defendant is subject to discretionary parole.

The judgment of conviction is affirmed, and the case is remanded with directions to

correct the mittimus to reflect discretionary parole.

Judge NEY and Judge WEBB concur.