The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Kenneth Harold KYLE, Defendant–Appellant.

No. 01CA1221.

Colorado Court of Appeals, Div. II.

July 29, 2004.

Rehearing Denied Nov. 18, 2004.

Certiorari Denied May 2, 2005.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Kenneth Harold Kyle, appeals the judgment of conviction entered upon a jury verdict finding him guilty of sexual assault on a child and sexual assault on a child as part of a pattern of sexual abuse. He also appeals his adjudication as a habitual sex offender and the sentence imposed. We affirm in part, reverse in part, and remand for resentencing.

The victim, a boy who had been in state custody much of his life, revealed during therapy at the Emily Griffith Treatment Center (EGTC), where the Department of Human Services (DHS) had placed him, that defendant sexually abused him beginning in August 1997, when he was thirteen. The victim testified at trial that he and defendant engaged in frequent acts of masturbation, oral sex, and anal sex, with the last act occurring just before he turned fifteen.

Before trial, defendant filed a motion seeking to admit evidence that another perpetrator previously had sexually assaulted the victim. Defendant asserted that the victim had "repackaged" the details of the previous assaults to fabricate suspiciously similar allegations against him. The trial court denied the motion.

Also before trial, defendant subpoenaed the victim's records from DHS and EGTC, contending that the records contained relevant evidence concerning the victim's fabrication of past and present allegations; the victim's drug or alcohol addiction, which may have affected his ability to perceive or recol-

lect; and other circumstances surrounding the present period of alleged abuse.

Both DHS and EGTC moved to quash the subpoenas. After a hearing, the trial court denied access to both sets of records. It declined to perform an in camera review of the DHS records, determining that defendant had failed to make the requisite showing of necessity. It found the EGTC records to be privileged pursuant to the psychologist-patient privilege set forth in § 13–90–107(1)(g), C.R.S.2003. Later, during trial, the court rejected defendant's supplemental contention that the victim had waived his privilege as to the EGTC records.

At trial, the prosecution was permitted to introduce evidence of defendant's two prior sexual assaults on a child in the form of testimony by the prior victims, pursuant to § 16–10–301, C.R.S.2003, and CRE 404(b).

Following defendant's conviction, the trial court adjudicated him a habitual criminal and sentenced him pursuant to the Colorado Sex Offender Lifetime Supervision Act, § 18–1.3–1001, et seq., C.R.S.2003, to an indeterminate sentence of forty-eight years to life in the custody of the Department of Corrections.

## I.

Defendant contends the trial court erred by excluding evidence that another perpetrator previously had sexually assaulted the victim. We disagree.

■ We review a trial court's determination concerning the relevance of proffered evidence for abuse of discretion and will not overturn the ruling unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Melillo*, 25 P.3d 769 (Colo.2001).

■ Section 18–3–407(1), C.R.S.2003, known as the rape shield statute, creates a presumption that evidence relating to a rape victim's sexual conduct is irrelevant to the proceedings. *People in Interest of K.N.*, 977 P.2d 868 (Colo.1999). Prior sexual victimization is considered "sexual conduct" under the rape shield statute. *People v. Aldrich*, 849 P.2d 821 (Colo.App.1992).

■ The purpose of the rape shield statute is to protect sexual assault victims from humiliating public fishing expeditions into their past sexual conduct, unless it is shown that the evidence is relevant to some issue in the case. *People in Interest of K.N.*, supra. The statute reflects the General Assembly's intent to prevent victims of sexual assaults from being subjected to psychological or emotional abuse as the price of their cooperation in prosecuting sex offenders. *People v. Harris*, 43 P.3d 221 (Colo.2002).

Here, the victim testified at trial that the abuse in this case commenced after he spent the night at defendant's house. The next morning, he woke to find defendant kneeling by the side of the couch, fondling his penis. Later that day, upon his return to defendant's house, he and defendant engaged in masturbation games and anal penetration. He also testified that on another occasion, he performed oral sex on defendant and that the abuse continued over the next several years.

The arrest affidavit in the other case asserted that the perpetrator began the abuse by kneeling at the side of the victim's bed and rubbing the victim's penis, after which the victim performed anal intercourse upon the perpetrator. The affidavit also asserted that the victim and the perpetrator engaged in subsequent acts of oral and anal sex over the next eighteen months.

## A.

■ Defendant first asserts that his proffered evidence was admissible because the previous assault qualifies for admission under the exception for "similar evidence of sexual intercourse" set forth in § 18–3–407(1)(b), C.R.S.2003. We disagree.

The statutory presumption of irrelevance does not apply to "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." Section 18–3–407(1)(b).

■ In construing a statute, we must ascertain and effectuate the legislative intent, which is to be discerned, when possible, from

the plain and ordinary meaning of the statutory language. *People v. Longoria*, 862 P.2d 266 (Colo.1993). Constructions that defeat the obvious legislative intent should be avoided and, when possible, a statute should be interpreted so as to give consistent and sensible effect to all its parts. *People v. Dist. Court*, 713 P.2d 918 (Colo.1986). We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that leads to an unreasonable or absurd result. *People v. Woellhaf*, 87 P.3d 142 (Colo.App.2003)(*cert. granted*, Mar. 22.2004). We must endeavor to give effect to each word in a statute. *City of Florence v. Bd. of Waterworks*, 793 P.2d 148 (Colo.1990).

Here, defendant asserts that evidence of the victim's previous, factually similar assault falls within the ambit of "any similar evidence of sexual intercourse" because it explains the origin of the victim's detailed "sexual knowledge." The trial court determined that § 18–3–407(1)(b) applies only to evidence explaining the source or origin of *physical* evidence or condition, as indicated by the examples of "semen, pregnancy, [or] disease" in the first clause of § 18–3–407(1)(b). We agree with the trial court.

The plain meaning of "similar" is "having characteristics in common," or "very much alike." *Webster's Third New International Dictionary* 2120 (1986). Therefore, in § 18–3–407(1)(b), "similar evidence" refers to evidence having characteristics in common with, or very much like evidence showing the source or origin of "semen, pregnancy, [or] disease," all of which are examples of physical evidence or condition.

We agree with the People that if the General Assembly had intended the interpretation urged by defendant, it would have employed the words "any other evidence" instead of "similar evidence." *See People v. Guenther*, 740 P.2d 971 (Colo.1987)(it is presumed the General Assembly has knowledge of the legal import of the words it uses and that it intends each part of a statute to be given effect).

Moreover, acceptance of defendant's interpretation that "similar evidence of sexual intercourse" includes evidence of a victim's prior sexual conduct would defeat the purpose of the rape shield statute. Such an interpretation would render all the victim's prior sexual conduct relevant, in direct contradiction of the expressed intention to protect sexual assault victims from embarrassing probes into their personal lives. *See People v. Harris, supra.*

We therefore perceive no abuse of discretion in the trial court's refusal to admit evidence of the victim's prior sexual assault under § 18–3–407(1)(b).

### B.

■ We also reject defendant's argument that evidence of the victim's prior sexual assault is admissible under § 18–3–407(2), C.R.S.2003, because it is relevant to show that the victim "repackaged" the facts of that assault to fabricate the allegations here.

If the evidence does not fall within one of the statutory exceptions contained in § 18–3–407(1), the presumption of irrelevance may nevertheless be rebutted when the defendant offers proof that the evidence is relevant to a material issue in the case. If the trial court determines the offer of proof to be sufficient, it must conduct an in camera hearing regarding the evidence. Section 18–3–407(2); *People v. Murphy*, 919 P.2d 191 (Colo.1996).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *People v. Harris, supra.*

However, evidence within the ambit of § 18–3–407(2) is not automatically admissible, as it remains subject to the usual rules of evidence. Specifically, a trial court must apply CRE 403 to balance the probative value of the proffered evidence against any possible unfair prejudice. *See People v. Harris, supra; People v. Melillo, supra.*

Here, the trial court determined that defendant did not establish sufficient relevancy or materiality regarding evidence of the victim's prior sexual assault to require an in camera evidentiary hearing. It found such evidence to be inadmissible because nothing

about the prior assault suggested that defendant should be exonerated of the charges against him.

Defendant asserts the evidence was relevant because his defense was that nothing happened between the victim and him; that the previous perpetrator was the person who committed the acts against the victim; that the victim was motivated to get defendant in trouble because he was angry at him; that the acts alleged were very similar; and that the victim repackaged the incident he experienced with the previous perpetrator to fabricate his allegations here. We disagree for several reasons.

First, mere similarity between two series of sexual assaults is insufficient to demonstrate the relevance of the facts of the first series to the facts at issue in the second series. Were it otherwise, a defendant would always be able to introduce previous assaults if any similarity could be demonstrated. That result directly contradicts the purpose of the rape shield statute. *See People in Interest of K.N., supra.*

Second, the previous perpetrator acknowledged committing numerous assaults against the victim. Given this admission, the prior assault evidence did not establish that the victim fabricated the allegations against defendant.

Third, no expert or other psychological evidence was offered or presented to demonstrate that the victim repackaged or transferred his previous experiences to these assaults.

Fourth, the prosecution did not rely upon any purported "precocious sexual knowledge" by the victim to show that he could only have learned about such sexual acts through the sexual assaults defendant committed. In addition, the prosecution did not assert that the victim's age was such that an inference could arise that he would not know about such sexual acts unless he had experienced them with defendant. Indeed, the victim was sexually mature when the asserted assaults commenced. *See LaJoie v. Thompson,* 217 F.3d 663 (9th Cir.2000)(prior sexual history of sexually immature victim relevant to show that victim could have learned about sexual acts

and anatomy other than through rape by defendant); *State v. Rolon,* 257 Conn. 156, 777 A.2d 604 (2001)(distinguishing case precluding admission of previous assaults where victims were fourteen or fifteen, an age at which most young adults are less likely to be confused about perpetrator's identity than young children, and are capable of understanding matters of a sexual nature); *cf. State v. Samuels,* 88 S.W.3d 71 (Mo.Ct.App.2002)(previous sexual assaults admissible because prosecution used evidence of victims' precocious sexual knowledge and physical abnormalities to draw inference that such resulted from defendant's sexual abuse of victims; however, victims' statements concerning previous abuse not admissible to show victims' motive to lie because no indication that victims made previous allegations of abuse and received a benefit from those allegations).

Finally, even if the evidence were relevant, the balancing test required by CRE 403 weighs in favor of excluding the evidence to avoid unfair prejudice to the victim. Any relevance of the prior assault was not so strong as to overcome the rape shield statute's presumption against the admissibility of such evidence. The unfair prejudice that would have resulted from the admission of such evidence, in the form of the victim's humiliation and psychological abuse, is precisely what the statute prohibits. *See People v. Wallen,* 996 P.2d 182 (Colo.App.1999)(affirming exclusion of evidence that the victim had previously falsely reported several sexual assaults where the impeachment value did not outweigh the harm to the victim as required by § 18–3–407 and CRE 403).

Hence, we conclude that the trial court did not abuse its discretion by declining to hold an in camera hearing or by excluding this evidence.

## II.

 Defendant contends the trial court erroneously admitted evidence regarding his threatening and harassing behavior toward the victim's treatment providers. The People assert, and we agree, that such evidence was admissible as res gestae.

■ Initially, we note that because defendant did not object to the evidence in the trial court, a plain error standard of review applies. Plain error occurs when, after a review of the entire record, an appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Bogdanov v. People,* 941 P.2d 247, *amended,* 955 P.2d 997 (Colo.1997); *People v. Woellhaf, supra.*

■ Res gestae evidence is evidence of other offenses or acts that is integral to the criminal episode or transaction with which a defendant is charged. If it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, res gestae evidence is admissible to provide the fact finder with a full understanding of the events surrounding the crime. *People v. Quintana,* 882 P.2d 1366 (Colo.1994); *People v. James,* 40 P.3d 36 (Colo.App.2001).

■ Evidence of a defendant's behavior, including threats against witnesses or non-witnesses, may be admissible to show that the defendant was conscious of guilt and, by further inference, committed the crime charged. *People v. Lowe,* 660 P.2d 1261 (Colo.1983)(admitting threats against a non-witness) *overruled in part on other grounds by Callis v. People,* 692 P.2d 1045 (Colo. 1984); *People v. Eggert,* 923 P.2d 230 (Colo.App.1995)(admitting threats against a witness).

Here, defendant was in a relationship with the victim's mother, purported to act as the victim's father, and had been named a special respondent in the dependency and neglect proceeding involving the victim. The victim's therapist at EGTC testified that she conducted family therapy sessions with the victim, his mother, and defendant. The therapist described how her relationship with defendant became increasingly hostile and how defendant would yell during therapy sessions and storm out of the room. She also testified that defendant threatened the victim during the sessions with statements that he would "not be his dad anymore" and "was not going to love him anymore." The therapist also explained that outside of therapy sessions, defendant referred to himself as the victim's father or "spiritual advisor."

The therapist testified that she restricted defendant's contact with the victim because it was counterproductive, which made defendant very angry. She explained that defendant threatened to and did file lawsuits against her, eventually filed a grievance which was determined to be unfounded, and tried to file criminal charges against her with the police. The therapist also described how defendant verbally threatened her, called her a "satanist" and a "pagan," stated that he knew where her children went to school, and repeatedly called her on her cell phone until midnight. She explained that she finally left her job at EGTC, believing the safety of her children was at risk.

Further, the victim's caseworker at DHS testified that defendant became very angry when he recommended the victim be removed from the home and placed in EGTC. The caseworker explained that defendant threatened to smear his reputation in the papers and initiated numerous grievances against him and his office.

Defendant admitted during his testimony at trial that he had filed numerous lawsuits and grievances against many of the victim's treatment providers because he felt they were not acting in the victim's best interests, and he explained how he was the victim's "spiritual advisor" and "religious godfather."

We agree with the People that the treatment providers' testimony, all of which described defendant's behavior occurring before the victim disclosed the sexual abuse, formed an integral part of the account of defendant's crimes. This evidence was relevant to show defendant's consciousness of guilt and his continual efforts to control the victim, including his attempts to prevent the victim from divulging the abuse. *See People v. Lowe, supra; People v. Eggert, supra.*

Further, such evidence was relevant to rebut defendant's own claims that he acted as the victim's father figure or "spiritual advisor." Defendant's behavior was in radical opposition to his defense at trial that he

was a caring person concerned about the victim's welfare.

We reject defendant's contention that the therapist improperly revealed statements he made to her during family therapy sessions that were protected by the psychologist-patient privilege under § 13–90–107(1)(g). Even assuming the privilege prohibited her testimony regarding defendant's behavior during the sessions, such testimony was merely cumulative of the treatment providers' testimony regarding defendant's threatening and harassing behavior outside of therapy sessions. *See People v. Allee,* 77 P.3d 831 (Colo.App.2003)(any error in admission of testimony was harmless where the testimony was essentially cumulative of other, admissible testimony).

Hence, we find no plain error.

## III.

We reject defendant's assertion that the trial court erred in admitting his two prior felony convictions for sexual assault on a child. We have fully reviewed the record on this issue and conclude that the trial court properly exercised its discretion in admitting the evidence under § 16–10–301, C.R.S.2003, and CRE 404(b). *See People v. Rath,* 44 P.3d 1033 (Colo.2002).

■ We also reject defendant's corollary assertion that the prosecutor improperly exploited the admission of his two prior convictions by thrice referring to defendant as a "two-time convicted sex offender" during closing argument.

Because defendant did not object to the comments during closing argument, we again review for plain error. *See People v. Alengi,* 114 P.3d 11, 2004 WL 583608 (Colo.App. No. 02CA0832, Mar. 25, 2004)(prosecutor's misconduct is plain error if it is flagrant or glaringly or tremendously improper).

Section 13–90–101, C.R.S.2003, allows admission of prior felony convictions to impeach the credibility of a witness. *People v. Carlson,* 72 P.3d 411 (Colo.App.2003).

Here, the record reveals that defense counsel, during voir dire, first raised the subject of defendant's prior convictions.

Further, the victim's caseworker testified that his department did an investigatory check on defendant and discovered that he had previously been convicted twice of sexual assault on a child. Immediately thereafter, the trial court instructed the jury that it could only use such testimony for the limited purposes set forth in § 16–10–301 and CRE 404(b). And defendant himself acknowledged his prior offenses during his testimony by indicating he was sorry for that conduct.

Hence, we perceive no plain error. *See People v. Constant,* 645 P.2d 843 (Colo.1982)(prosecutorial closing argument to which no trial objection is raised rarely constitutes plain error).

## IV.

■ Defendant contends his conviction on the pattern count must be reversed. He asserts that the instructions defining a pattern of abuse did not require the jury to make a specific finding that he had sexual contact with the victim during the ten-year period preceding the alleged dates of abuse as required by the relevant version of § 18–3–405(2)(d). He also asserts that the jury should have been required to find a specific predicate act of sexual assault had occurred, that the verdict forms were erroneous, and that the prosecutor misrepresented the applicable law in closing argument. We disagree.

■ Because defendant did not object to the instructions, verdict forms, or the prosecutor's argument at trial, we again review for plain error. In the context of instructional plain error, reversal is required if a defendant demonstrates not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction. *People v. Garcia,* 28 P.3d 340, 344 (Colo. 2001).

The relevant version of § 18–3–405(2)(d) provided that sexual assault on a child is a class 4 felony, but it is a class 3 felony if:

> The actor commits the offense as a part of a pattern of sexual abuse.... No specific date or time must be alleged for the pattern of sexual abuse; except that *the acts constituting the pattern of sexual abuse*

*must have been committed within ten years prior to the offense charged in the information or indictment.* The offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child necessary to form a pattern of sexual abuse as defined in section 18–3–401(2.5).

Colo. Sess. Laws 1995, ch. 240 at 1593 (emphasis added)(amended in 2002 to include pattern acts committed "at any time after" the charged offense).

A "pattern of sexual abuse" is defined as "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim." Section 18–3–401(2.5), C.R.S. 2003. Under § 18–3–405(2)(d), a pattern of sexual abuse is a sentence enhancement factor that, like the substantive predicate offense, must be proved beyond a reasonable doubt. *People v. Hansen,* 920 P.2d 831 (Colo.App.1995).

#### A.

We are not persuaded that the lack of a jury instruction on the ten-year period requires reversal.

In *People v. Honeysette,* 53 P.3d 714 (Colo. App.2002), a division of this court determined that the failure to include language requiring the jury to find that the act of sexual contact establishing the pattern occurred "within ten years prior to" the predicate act did not constitute plain error where the period of abuse alleged was less than ten years. The division reasoned that, when such a period is less than ten years and the jury is given a unanimity instruction, it is impossible for the jury to find a defendant guilty of the pattern of abuse enhancer without finding that the defendant committed at least two separate acts of sexual contact upon the same victim within the period alleged in the information.

Here, the court instructed the jury that the acts of sexual contact forming both the sexual assault on a child count and the pattern count were alleged to have occurred between January 1, 1997 and March 1, 1999. The trial court provided the proper definition of pattern of sexual abuse pursuant to § 18–

3–401(2.5) and gave a unanimity instruction without, however, referring to the specified ten-year period.

We are persuaded by the *Honeysette* rationale. Accordingly, we conclude that, because the jury was instructed here that it had to find at least two acts occurring during a period of less than ten years and that its finding had to be unanimous as to those specific acts, the failure to include the additional language in the instruction cannot amount to plain error.

#### B.

We also reject defendant's argument that the prosecutor misstated the law on the pattern count during closing argument. The prosecutor informed the jury:

There is a charge that is called pattern of conduct that you will see and that means that the prosecution has to prove that these sexual acts occurred two or more times and you must all unanimously agree on those two acts. And the acts which [the victim] told you about were the fondling incident first when he met this defendant, about the anal intercourse that happened just several hours later on that first day of meeting. He told you about the masturbation games and he told you [about] the fourth incident which is the oral intercourse.... Those are the acts which you will have to consider for purposes of this case, for purposes of both charges; sexual assault on a child which requires a unanimous decision under the second act and then sexual assault on a child, a pattern of conduct which requires unanimity on two sexual acts.

 The prosecutor correctly argued that the jury had to agree unanimously that defendant committed two or more sexual acts to find him guilty of the pattern count. Although the prosecutor's comment was confusing, the argument as a whole can be read to mean that to find defendant guilty of the pattern count, the jury must unanimously find defendant committed the "second act," that is, the act forming the pattern of sexual abuse. And the fact that defendant did not object to the comment suggests that it was

not overly damaging. *See People v. Rodriguez,* 794 P.2d 965 (Colo.1990).

Even assuming the comment was improper, in light of the trial court's instructions and the other proper argument by the prosecutor, we cannot say with fair assurance that any error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Vialpando,* 804 P.2d 219 (Colo.App.1990)(plain error exists only where there is a substantial likelihood that the prosecutorial misconduct affected the verdict or deprived the defendant of a fair and impartial trial); *see also People v. Constant, supra.*

Defendant also is mistaken in asserting that the prosecutor urged the jury to convict on the pattern charge based on two sexual acts occurring during one incident. *See People v. Woellhaf, supra* (the phrase "two or more incidents of sexual contact" in the definition of pattern of abuse means that the sexual contacts must occur during distinct episodes of sexual assault and be separated by time or an intervening event). Although the victim testified that both anal penetration and masturbation games occurred on the same night, he clearly testified that these acts were different, distinct, and separated by time. Under the facts presented here, each of the four acts was a separate incident for purposes of the jury's determination of defendant's guilt on the pattern count.

## C.

We also reject defendant's contention that the court committed plain error in failing to instruct the jury to specify which of the four acts of sexual assault described by the prosecution it found to be the predicate act.

To prove a pattern of abuse under the relevant version of § 18–3–405(2)(d), the prosecution must prove beyond a reasonable doubt that (1) the defendant committed an act charged under § 18–3–405(1), C.R.S.2003, that constituted the predicate offense for § 18–3–405(2)(d); and (2) the other act or acts constituting the pattern of sexual abuse were committed within ten years prior to the

predicate offense. *See People v. Gholston,* 26 P.3d 1 (Colo.App.2000).

When there is evidence of many transactions, any one of which would constitute the offense charged, the prosecution may select the transaction on which it relies for a conviction. Alternatively, the jury should be instructed that, to convict the defendant, it must unanimously agree either that the defendant committed the same act or acts or that the defendant committed all the acts described by the victim and included within the period charged. *See People v. Gholston, supra.*

Here, the pattern count, pursuant to both the trial court's instructions and the prosecutor's argument, included four acts of sexual assault allegedly occurring within a period of less than ten years. Any one of the four acts, except for the act occurring first in time, could have served as the predicate act to sustain a guilty verdict on the pattern count.

Because the jury found defendant guilty of the pattern count, it necessarily determined defendant committed at least two of the four specified acts, and at least one of those acts had to chronologically precede the other. Because all the acts occurred within less than ten years, and the jury was instructed that it must unanimously agree that defendant committed the same acts, there was no need either for the prosecution to specify which of the four acts it considered to be the predicate act or for the court to instruct the jury to do the same. *See People v. Gholston, supra; cf. People v. Brown,* 70 P.3d 489 (Colo.App.2002)(under the pre–2002 version of § 18–3–405(2)(d), pattern count conviction could not be sustained where there was no evidence of an act of sexual assault occurring prior to the charged predicate act).

Therefore, we perceive no plain error.

## D.

Defendant next contends that the verdict forms employed here require reversal. Specifically, he asserts that because pattern of sexual abuse is not a separate offense, the jury should not have received a separate

verdict form for that count. We conclude reversal is not required.

In *People v. Brown, supra,* the defendant was convicted of both sexual assault on a child and a related pattern count, and the jury was given a verdict form entitled "SEX-UAL ASSAULT ON A CHILD–PAT-TERN." The *Brown* division determined that because pattern is a sentence enhancement, not a separate offense, the verdict form should not have included the word pattern. Instead, the jury should have been given a verdict form requiring it to determine whether the defendant was guilty of sexual assault on a child, with interrogatories used to determine whether the pattern of sexual abuse allegations had been established. However, based on the clear jury instructions, argument, and testimony describing only two incidents of sexual abuse, the division found no plain error because the jury could not have convicted the defendant without unanimously finding that he had committed the two alleged acts.

Here, the jury was given two verdict forms, one entitled "SEXUAL ASSAULT ON A CHILD," and the other "SEXUAL ASSAULT ON A CHILD–PATTERN." Both verdict forms were otherwise identical, but did not identify the alleged acts or specify the period during which they were alleged to have occurred. We agree that, as in *Brown,* the jury should have been given only one verdict form for the sexual assault on a child count, with interrogatories used to determine whether the pattern had been established. However, as previously discussed, the jury could not have convicted defendant without unanimously finding that he had committed at least two of the four specific acts of sexual abuse. *See People v. Brown, supra.*

Contrary to defendant's assertion, the fact that the verdict forms did not list the specific alleged acts or the alleged time of their occurrence is not determinative, because the jury was clearly instructed regarding that time and was told of the four alleged acts during the prosecutor's closing argument. Hence, we perceive no plain error here.

**V.**

▮ Defendant asserts the trial court erred in denying him access to the victim's records maintained by EGTC and DHS. We disagree.

Section 19–1–307(1)(a), C.R.S.2003, provides that records of child abuse or neglect are confidential. Section 19–1–307(2)(f), C.R.S.2003, grants a court access to child abuse or neglect records upon its finding that access may be necessary for determination of an issue before the court. Such access is limited to an in camera inspection unless the court determines that public disclosure of the information contained in the records is necessary for the resolution of an issue pending before it. *People v. Frost,* 5 P.3d 317 (Colo. App.1999).

Communications between a psychologist and a client in the course of professional employment are statutorily privileged. Section 13–90–107(1)(g). A psychologist, however, "who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect … shall immediately … report or cause a report to be made of such fact to the county department [of human services] or local law enforcement agency." Section 19–3–304(1), (2)(p), C.R.S.2003.

Section 19–3–311, C.R.S.2003, provides that the psychologist-client privilege does not apply to any communication that is the basis for a report of child abuse under § 19–3–304, C.R.S.2003. *See Dill v. People,* 927 P.2d 1315 (Colo.1996).

Here, in compliance with § 19–3–311, defendant received a copy of notes of the victim's psychotherapist covering a four-month period which related to the allegations of sexual abuse against him. The trial court did not provide or review the remainder of the EGTC or DHS files in camera. Relying upon *Exline v. Gunter,* 985 F.2d 487 (10th Cir.1993), defendant asserts he made a showing of need sufficient to require the trial court to examine the records in camera. However, even if we assume the court should have conducted such a review, our own in camera review reveals any error was harmless beyond a reasonable doubt.

When a trial court should have conducted an in camera review of records, reversal is not required if an appellate court can conclude, upon review of the records, that the information in the files would probably not have changed the outcome of the defendant's trial, or if the nondisclosure was harmless beyond a reasonable doubt. *See Exline v. Gunter, supra.*

Here, defendant's appellate counsel was given access to the DHS and EGTC records and has directed our attention to those portions of the files that arguably bear on defendant's pretrial and trial assertions. We conclude none of those documents would have changed the outcome of any pretrial proceeding or defendant's trial. Hence, reversal is not required.

In view of this determination, we need not address defendant's remaining assertions on this issue.

## VI.

Defendant contends his adjudication as a habitual sex offender cannot stand. Specifically, he asserts that pursuant to *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the statute for habitual sex offenders against children, § 18–3–412, C.R.S.2003, is unconstitutional because it allows a judge, not a jury, to find facts that increase a defendant's sentence beyond that authorized by the jury's verdict. He also contends there was insufficient identification evidence to prove the habitual criminal charges. We disagree.

## A.

We reject defendant's constitutional contention for the reasons stated in *People v. Carrasco,* 85 P.3d 580 (Colo.App.2003), and *People v. Johnson,* 74 P.3d 349, 355 (Colo. App.2002). *See also People v. Vigil,* 104 P.3d 258, 2004 WL 1352647 (Colo.App. No. 02CA0833, June 17, 2004)(determining the defendant did not have a right to a jury trial on his habitual sex offender count). Further, we find nothing in *Woldt v. People,* 64 P.3d 256 (Colo.2003), or in the recent decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to change the analysis or result set forth in those cases.

## B.

A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Carrasco, supra.*

In habitual criminal proceedings, the prosecution bears the burden of proving beyond a reasonable doubt that the accused is the person named in the prior convictions. *People v. Bernabei,* 979 P.2d 26 (Colo.App. 1998).

Section 18–3–412(3), C.R.S.2003, governs the admission of evidence in habitual criminal proceedings for sex offenders against children. It provides that a duly authenticated copy of the record of a former conviction and judgment is prima facie evidence of the conviction and may be used as evidence at the habitual offender sentencing. However, this section does not establish the exclusive method for proving prior convictions. The prosecution may also carry its burden of proof by using certified copies of public records or documents that are admissible as public records under CRE 901(b)(7) or self-authenticating documents under CRE 902(1) and (4). *See People v. Martinez,* 83 P.3d 1174 (Colo.App.2003)(recognizing this principle in the context of § 18–1.3–802, C.R.S.2003, the general habitual criminal statute).

Offering evidence of fingerprint cards and expert testimony linking those prints to the defendant is one valid method for proving the identity of the defendant. *People v. Carrasco, supra.*

Here, the prosecution offered a triple-certified copy of documents from case 80CR568,

including the probation order, the information dated June 19, 1980, and a copy of the defendant's appeal in that case. It also presented a triple-certified copy of the documents from case 85CR1130, including the probation order and the affidavit for an arrest warrant bearing the defendant's date of birth, which indicated execution of the warrant on January 7, 1986.

The sets of documents indicated that an individual with defendant's name was convicted of a class 4 and a class 3 felony sexual assault on a child, respectively. Moreover, the prosecution offered two copies of fingerprints in connection with defendant's two prior arrests, which the trial court admitted as self-authenticating documents under CRE 902. One fingerprint card listed the same date of birth as that on the affidavit for the arrest warrant for case number 85CR1130. It also indicated that the fingerprints were taken on January 7, 1986, the same date the arrest warrant was executed. The other fingerprint card was dated June 19, 1980, matched the date on the information for case 80CR568, and included defendant's date of birth. Further, the probation orders, the affidavit for arrest warrant, and the fingerprint cards referred to the defendant as "Kenneth Harold Kyle."

The prosecution also offered the testimony of a fingerprint expert who personally fingerprinted defendant on a master card for this case and compared the fingerprints to those taken in connection with the two previous felony convictions. He identified both sets of fingerprints as belonging to defendant, the same person he fingerprinted on the master card. The expert also identified the copies of the fingerprint cards as the same documents he had used in his comparisons, as shown by his initials, his badge number, and the date that he had inscribed on the cards.

We agree with the trial court that the evidence presented was sufficient to allow a reasonable fact finder to determine, beyond a reasonable doubt, that defendant is the same Kenneth Harold Kyle who was convicted of the two previous felonies. *See People v. Bernabei, supra.* The fingerprint cards from defendant's previous arrests sufficiently linked him to the probation orders and other

documentation regarding both of his prior felony convictions. Further, the fingerprints taken from defendant in this case matched those taken in connection with the other convictions. *See People v. Carrasco, supra.*

■ Defendant nevertheless asserts that the fingerprint cards did not meet the requirements of CRE 902 and were therefore inadmissible. However, we conclude that the fingerprint cards, which the expert authenticated and recognized as being the same documents he used in his comparisons, were admissible under CRE 901(b)(7), because they are public records certified by the Arapahoe County Sheriff's Office and the Aurora Police Department. Hence, we need not address whether such evidence would be separately admissible under CRE 902. *See People v. Bielecki,* 964 P.2d 598 (Colo.App.1998)(documents admitted pursuant to CRE 901(b)(7) may be used to support a habitual criminal conviction).

We also reject defendant's contention that the fingerprint card dated January 7, 1986 did not correspond to case 85CR1130 because that conviction was for an offense committed on November 6, 1985. The date on the card matched the date on the arrest warrant, which contained the same case number, 85CR1130, as the probation order and affidavit for arrest warrant.

■ Defendant's reliance on *De Gesualdo v. People,* 147 Colo. 426, 364 P.2d 374 (1961), for the proposition that testimony from the fingerprint expert was inadmissible as hearsay, is misplaced. In that case, an expert testified that the fingerprints from an identification card in his possession matched those taken previously by another law enforcement agency. However, the prosecution did not introduce the identification card the expert relied upon, nor did the prosecution prove that the fingerprints the expert used to compare with those on the identification card belonged to the defendant. Accordingly, the supreme court concluded the expert's testimony was inadmissible.

Here, however, the fingerprint expert's testimony complied with *De Gesualdo.* The expert testified that the fingerprints were true copies of the originals and that he per-

sonally identified defendant as the same person who was previously fingerprinted. Hence, defendant's challenge fails.

## VII.

We agree with defendant's contention that he was improperly sentenced under the Colorado Sex Offender Lifetime Supervision Act (the Act) because the jury's verdict could have been based on a predicate act of sexual assault that preceded the Act's November 1, 1998 enactment date. We also agree that the extraordinary risk of harm enhancement pursuant to § 18–1.3–401(10)(a), C.R.S.2003, was improperly applied to his sentence.

As relevant here, when a law makes the punishment for a crime more onerous than the punishment in effect when the crime was committed or imposes punishment for an act that was not a crime when it was committed, it violates the constitutional prohibitions against ex post facto laws. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *People v. Luman*, 994 P.2d 432 (Colo.App.1999).

For a criminal statute to be considered an ex post facto law, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. *People v. Graham*, 876 P.2d 68 (Colo. App.1994). A defendant cannot avoid the application of a law increasing the applicable penalty by committing one element of the crime before the increase and then completing the crime after the change. *People v. Bastian*, 981 P.2d 203 (Colo.App.1998); *see also People v. Myers*, 45 P.3d 756 (Colo.App. 2001).

The Act applies only to offenses committed after November 1, 1998. Its enactment coincided with the enactment of §§ 18–1.3–1001, et seq., and 18–1.3–401(10)(c), which eliminated the extraordinary risk sentence enhancement set forth in § 18–1.3–401(10) for sex offenses committed after that date.

Here, the prosecution charged and presented evidence of four specific incidents of sexual contact. The victim testified that the first incident occurred approximately two weeks after he met defendant in 1997, and the next two incidents occurred later that same day. The victim could not remember when the last incident occurred, but he thought it was sometime before he turned fifteen.

We conclude defendant cannot be sentenced under the Act because the jury was not instructed it had to find the predicate offense occurred after the effective date of the Act. The jury was instructed that the alleged acts of sexual assault occurred within the January 1, 1997 through March 1, 1999 period. Thus, the verdict could have been based on a finding that the predicate act was the second or third incident, both of which occurred before November 1, 1998. Alternatively, the jury could have chosen the fourth incident as the predicate act, the exact date of which was never established.

Because we cannot determine from the verdict whether the offense selected by the jury to justify the pattern enhancement occurred after the effective date of the Act, defendant's sentence under the Act cannot stand. *See People v. Luman, supra* (where the information charged and the evidence included conduct by the defendant that predated the applicable sexual assault statute, the defendant's conviction for sexual assault on a child-pattern under the amendment violated the prohibition against ex post facto laws); *People v. Graham, supra* (concluding that a pattern enhancement violated the prohibition against ex post facto laws because the jury was not instructed that it had to find the predicate offense occurred after the effective date of the statute).

The People rely on *People v. Flagg*, 18 P.3d 792 (Colo.App.2000), for the proposition that defendant's offense was not completed until after the effective date of the Act. But in *Flagg* the defendant pleaded guilty to sexual assault on a child occurring between December 25, 1989 and July 9, 1993. The *Flagg* division concluded that defendant's plea of guilty to the crime, up to and including the last date alleged in the charge, was equivalent to admitting all material facts alleged. Thus, the court assumed the crime was not completed until after July 1, 1993, the effective date of the parole statute at issue there.

*Flagg* is distinguishable from this case because there, the defendant's crime was not completed until the last date alleged in the

charge to which he pleaded guilty. *See People v. Bastian, supra.* Here, there was evidence of a continuing pattern of sexual abuse after the effective date of the Act, but all the elements of defendant's offenses could have been completed before the effective date of the Act. Unlike in *Flagg*, here the jury was given four incidents to consider in determining defendant's guilt of the predicate offense, some of which were, and all of which could have been, completed before the effective date of the Act.

Similarly, we conclude defendant was incorrectly sentenced under the extraordinary risk enhancement provision in § 18–1.3–401(10) because it is inapplicable to offenses committed after November 1, 1998.

The judgment of conviction is affirmed, the sentence is reversed, and the case is remanded for resentencing in accordance with the views expressed herein.

Judge ROTHENBERG and Judge PIERCE * concur.